SECURITY TRUST COMPANY, NOW DETROIT TRUST COMPANY, AND ANNA DODGE DILLMAN (FORMERLY ANNA THOMSON DODGE), AS TRUSTEES APPOINTED BY THE PROBATE COURT OF WAYNE COUNTY, MICHIGAN, UNDER THE WILL OF HORACE E. DODGE, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 25325.   Promulgated December 31, 1931.

*Archibald Broomfield, Esq.*, and *Hal H. Smith, Esq.*, for the petitioners.

*W. H. Trigg, Esq.*, and *L. H. Rushbrook, Esq.*, for the respondent.

OPINION.

MURDOCK: The Commissioner determined a deficiency of $4,145,-635.41 in the income-tax liability of the Horace E. Dodge Trust for the year 1925. The parties have entered into a stipulation, which is made a part hereof by reference. The liability for tax on all miscellaneous items as to which errors were assigned in the petition has been conceded by the petitioner in this stipulation. The sole issue now in controversy is as to the proper basis upon which to compute the taxable gain realized by the petitioner in 1925 by reason of the receipt of a liquidating dividend from the Dodge Estates Corporation.

Horace E. Dodge died testate on December 10, 1920. At the time of his death he was a citizen of the United States and of the State of Michigan, residing in the Eastern District of Michigan. His will was duly admitted to probate on February 10, 1921, by the Probate Court of Wayne County, Michigan. In his will the decedent named as his executors his wife, Anna Thomson Dodge, now Anna Dodge Dillman, and Howard B. Bloomer. On February 11, 1921, these two persons qualified as such executors and letters testamentary were issued to them by the Probate Court of Wayne County. They were still acting as executors up to the time of the hearing of this case.

The gross estate of Horace E. Dodge was appraised for estate-tax purposes at $40,540,976.17. Among the assets of the estate were 50,000 shares of stock of Dodge Brothers which were appraised for Federal estate-tax purposes, as of the date of the decedent's death, at $29,343,350. The 50,000 shares were increased on or about De-

cember 28, 1922, to 250,000 shares by a stock dividend at which time the corporation was permitted to capitalize its surplus earnings.

On February 11, 1921, the executors obtained possession of all of the personal property of the estate, including the Dodge Brothers stock, and continued in possession thereof until the stock was turned over to the trustees. While they were in possession of this stock they received dividends on it and voted it at a number of stockholders' meetings. During this same period the executors paid debts, liabilities, taxes and administration expenses of the estate and also expended some money in the preservation of the estate. The will gave them power to sell personal property.

The will of Horace E. Dodge provided for the payment of his debts and funeral expenses; gave to his wife his jewelry, personal belongings, pictures, insurance, private yacht and other similar items. Pecuniary legacies amounting in all to $16,400 were made and all were to be paid in full, free of taxes. It further provided that all the residue of the estate be given, devised and bequeathed to Anna Thomson Dodge and Howard B. Bloomer and their successors in trust. It also named John Ballantyne of Detroit as an alternative trustee. The trustees were given power to convert the property which came into their hands into income-producing personal property, and the power to sell, convey and keep invested the property. The trustees were directed to collect all income and from such income, first to pay all taxes, insurance, repairs and other maintenance charges of the estate, and then to pay certain specified amounts annually to certain named individuals for life, " the same to be payable quarterly from the date of my death." The will also provided that a certain amount should be paid each month to the decedent's wife's father during his life. All of the balance of the net income of the estate was to be paid to the decedent's wife for life in quarterly payments. After her death the trustees were to dispose of the estate by purchasing annuities to cover payments to be made to the other life beneficiaries then living, and to deliver the remainder of the trust fund to the decedent's children.

Howard B. Bloomer declined to act as a trustee. On June 14, 1924, the Probate Court of Wayne County entered an order reciting that Anna Thomson Dodge and John Ballantyne had filed their acceptance of the trusteeship under the will, finding that they were suitable persons to perform the duties as trustees under the will, and ordering that they give bond in the penal sum of $100, and, on the approval thereof, letters of trusteeship under the trust created by the will should issue to them. The bond was filed and approved and letters of trusteeship were issued to them on June 14, 1924. Since that time they have acted continuously as such trustees and have had their principal office in the city of Detroit, Michigan,

except that on or about July 21, 1927, John Ballantyne resigned as trustee, and the Security Trust Company of Detroit, Michigan, now the Detroit Trust Company, was appointed successor.

On June 14, 1924, the Probate Court of Wayne County, Michigan, ordered distribution to the trustees of the entire residue of the Horace E. Dodge estate, except certain items having a value of about $2,180,000. Pursuant to this order the 250,000 shares of the Dodge Brothers stock were transferred and delivered by the executors to the trustees on July 12, 1924. The trustees thereafter had possession of the stock, voted it, and received dividends including the liquidating dividend herein involved.

On June 14, 1924, when the order of distribution was made, and on July 12, 1924, when the stock was transferred by the executors to the trustees, the 250,000 shares of Dodge Brothers stock had a fair market value of $57,500,000.

On May 1, 1925, Dodge Brothers sold all of its assets as a going business, subject to most of its liabilities, for $146,000,000 in cash. Thereafter, on May 4, 1925, the company (then called the Dodge Estates Corporation) filed a notice of dissolution and the directors distributed and paid in cash a liquidating dividend of $125,000,000. The trustees under the will of Horace E. Dodge, as holders of one-half of the stock of the company, received one-half of the liquidating dividend or $62,500,000. This dividend was the first of a series of distributions in complete cancellation or redemption of the stock of the company.

The trustees filed an income-tax return for the year 1925, and in a rider attached thereto disclosed the receipt of this liquidating dividend, but did not include any part of it in the taxable income of the trust. They contended that the value of the stock on June 14, 1924, and July 12, 1924, was not less than $62,500,000, and therefore, they had received no taxable profit.

No portion of the liquidating dividend of $62,500,000 has been distributed by the trustees to any of the beneficiaries of the trust. The stock of Dodge Brothers owned by Horace E. Dodge at the date of his death on December 10, 1920, had a fair market value on that date of $29,343,350. The Commissioner, in determining the deficiency, included in income and taxed under section 208 of the Revenue Act of 1926, the difference between the value of the Dodge Brothers stock at the date of the death of Horace E. Dodge and $62,500,000.

The case of *Detroit Trust Company et al., Trustees under the Will of John F. Dodge, deceased*, Docket No. 29402, was heard at the same time that this case was heard. The two cases were argued simultaneously, and, although two sets of briefs were filed on behalf of the petitioners, these briefs were complementary. The same question is involved in each case. Therefore, all of our discussion of the ques-

tion appears in this report and we have issued only a memorandum in the other proceeding.

The only issue in these two cases is as to the proper basis on which to compute the taxable gain realized by each trust in 1925 by reason of the receipt of a liquidating dividend from the Dodge Estates Corporation. The Revenue Act of 1926, which became retroactively effective as of January 1, 1925, provides as follows in section 204(a) (5) for determining gain from the disposition of property acquired after February 28, 1913:

> If the property was acquired by bequest, devise, or inheritance, the basis shall be the fair market value of such property at the time of such acquisition.

The petitioners contend that the proper basis is the value of the stock on the dates transferred to the trustees by the executors, its value on the dates when the probate court entered its orders of distribution, or its value on the dates upon which the trustees qualified. It has been stipulated in each case that the value of the stock was the same on each of these dates. The respondent contends that the value of the stock on the date of the testator's death is the proper basis. We stated to counsel for the petitioners at the argument of this case, that the case of *Brewster* v. *Gage*, 280 U. S. 327, made their position extremely difficult and we are of the opinion still that the petitioners have failed to sufficiently distinguish their cases from the *Brewster* case, and therefore, their contentions must fail.

Brewster was a residuary legatee; so are the present petitioners. In each case executors were appointed by will; such executors administered the estate; and distribution was made to the residuary legatees of the residuary estate, which consisted of personal property, to wit, stock. The Commissioner made the same contention in the *Brewster* case that he makes here. The provisions of the acts involved are in all material respects the same, and the decision of the question involved depends here, as it depended there, upon the construction of the word " acquired " and the phrase " at the time of such acquisition." The only differences between the situation in the *Brewster* case and the situation in each of the present cases is that the estate in the *Brewster* case was administered under the laws of the State of New York, while the Dodge estates were administered under the laws of the State of Michigan, and Brewster, an individual, was in being at the time of his testator's death, whereas the residuary estate of each of the two Dodge brothers was left to trustees for the benefit of certain individuals, and the trustees, although appointed by will, did not qualify until the date of the final order of distribution. However, the beneficiaries, and also those who later qualified as trustees, were in existence at the time of the decedent's death.

The court said in the *Brewster* case:

Upon the death of the owner, title to his real estate passes to his heirs or devisees. A different rule applies to personal property. Title to it does not vest at once in heirs or legatees. *United States* v. *Jones*, 236 U. S. 106, 112, 35 S. Ct. 261, 59 L. Ed. 488, Ann. Cas. 1916A, 316. But immediately upon the death of the owner there vests in each of them the right to his distributive share of so much as shall remain after proper administration and the right to have it delivered upon entry of the decree of distribution. *Sanders* v. *Soutter*, 136 N. Y. 97, 32 N. E. 638; *Vail* v. *Vail*, 49 Conn. 52; *Cook* v. *McDowell*, 52 N. J. Eq. 351, 30 A. 24. Upon acceptance of the trust there vests in the administrators or executors, as of the date of the death, title to all personal property belonging to the estate; it is taken, not for themselves, but in the right of others for the proper administration of the estate and for distribution of· the residue. The decree of distribution confers no new right; it merely identifies the property remaining, evidences right of possession in the heirs or legatees, and requires the administrators or executors to deliver it to them. The legal title so given relates back to the date of the death. *Foster* v. *Fifield*, 20 Pick. (Mass.) 67, 70; *Wager* v. *Wager*, 89 N. Y. 161, 166; *Thompson* v. *Thomas*, 30 Miss. 152, 158.

Petitioner's right later to have his share of the residue vested immediately upon testator's death. At that time petitioner became enriched by its worth, which was directly related to and would increase or decline correspondingly with the value of the property. And, notwithstanding the postponement of transfer of the legal title to him, Congress unquestionably had power and reasonably might fix value at the time title passed from the decedent as the basis for determining gain or loss upon sale of the right or of the property before or after the decree of distribution. And we think that, in substance, it would not be inconsistent with the rules of law governing the descent and distribution of real and personal property of decedents to construe the words in question to mean the date of death.

Undoubtedly the basis for the ascertainment of gain or loss on the sale of real estate by an heir or devisee is its value at the time of decedent's death. That is "the time of such acquisition." The decree of distribution necessarily is later than, and has no definite relation to, the time when the real estate passes. And generally specific bequests are handed over to the legatees soon after the death of the testator, and such property may be and often is sold by them prior to the entry of the decree for final distribution. In such cases gains or losses are to be calculated under these acts on value at the time of death. No other basis is or reasonably could be suggested.

There is nothing in either of the acts or in their legislative history to indicate a purpose to establish two bases—(1) value of real estate and specific bequests at time of death; and (2) value of other property at date of decree. The rule that ambiguities in tax laws are to be resolved in favor of taxpayers has no application here, because it is impossible to determine which basis would impose a greater burden. And neither construction is to be preferred on the ground that the other would raise serious question as to constitutional validity. The generality of the words used in both acts indicates intention that the value at the time of death of the decedent was to be taken as the basis in all cases.

The Revenue Act of 1918 and subsequent acts taxed incomes of estates during the period of the administration, including profits on sales of property, and such gains are calculated on value at date of decedent's death. There appears to be no reason why gains or losses to the estate should be calculated on one basis and those to the residuary legatees on another.

The court then pointed out that Treasury regulations under the revenue acts in force between 1917 and 1928 declared that value at time of the death of decedent should be taken as the basis for ascertaining profit or loss from the sale of property acquired by bequest or descent since February 28, 1913; the rule so established is reasonable, does no violence to the letter or spirit of the provisions construed and should not be disturbed except for weighty reasons; the situation was no different under the Revenue Acts of 1924 and 1926; the substantial reenactment of the provision as construed by the Treasury Department is persuasive evidence of legislative approval of the regulation; and the deliberate selection of the language of the Revenue Act of 1928, which differed so materially from that used in the earlier acts, indicates that a change of law was intended, but this change should not be retrospectively applied.

The petitioners argue that the *Brewster* case can have no further application than the facts and the issue therein involved; it involved an individual in being who was a residuary legatee; therefore, it does not apply to testamentary trustees who did not come into existence until the date of distribution. The Supreme Court has frequently said that it decides each case on the facts of that case, and it may conceivably make the very distinction suggested. But in view of the similarity between the two cases and the language and reasoning of the Supreme Court in the *Brewster* case, our judgment impels us to follow it in a case such as the present until the court itself says that the effect of the case is not as broad as we have interpreted it to be.

The petitioners make a number of arguments, many of them quite forceful and persuasive, which we will not attempt to answer categorically, for the reason that they are contrary to the holding of the court in the *Brewster* case and to set them forth would unduly lengthen this opinion. We will discuss only those circumstances of the present cases which have no apparent parallel in the *Brewster* case. One difference is that the one case arose in New York and is affected by the laws of that State, whereas the others arose under the laws of Michigan. The other difference is that Brewster was an individual in being at the time of his testator's death, whereas the residuary estate involved in each of the present cases was left to trustees for the benefit of others, which trustees, although in existence at the time of the decedent's death and named in his will, did not accept, qualify and receive the authorization of the probate court until the date of distribution. The petitioners would inter-relate these two differences as will appear in the discussion which follows.

The petitioners contend that the law of Michigan is quite different from the law of certain other States, particularly that of New York, in that testamentary trustees in Michigan are appointed by the pro-

bate court and not by the testator as in the other States. They further contend in this connection, "that until appointment, acceptance and qualification the trustee does not come into existence, and until distribution he has no powers or duties with respect to the trust estate; that appointment, acceptance and qualification is the inception of his existence as trustee; and that the order of distribution is the inception of legal title and possession in the trustee. It is the beginning of the trustees, as such, and the trust estate." But the cases and the law cited do not fully support the petitioners' position. The true situation is somewhat less favorable to the petitioners.

An executor's interest in a testator's estate is what the testator gives him and is derived from the will "whatever may be the form which the law requires to be observed before an executor enters upon the discharge of his functions." *Hill* v. *Tucker*, 13 How. 458. An executor is a fiduciary. He holds legal title to certain property in which others have the beneficial interest. His duties are those of a trustee. A probate court has no authority to nominate or appoint an executor. It has power to clothe the executor appointed by the will with legal authority to act, but has no authority to do otherwise unless the executor appointed by the will is disqualified or fails to qualify. Some time always elapses after the death of a testator before his executor is granted letters testamentary and is clothed by the probate court with legal authority to act. After he has assumed his duties he may perhaps sell property belonging to the estate, and if he does it is obvious that the basis for gain or loss from such sale is the value of the property at the time of the testator's death, even though at the date of death the executor had not assumed his duties as fiduciary or been clothed with full authority to act.

The situation of a testamentary trustee is not very different except that he is something which the executor is not, namely, a legatee under the will. He also is appointed by the will and derives his interest in the testator's estate from the will. The law also requires that certain forms be observed before a testamentary trustee may enter upon the discharge of his functions. But the probate court can not appoint a testamentary trustee. The title means appointed by will. The probate court has power to clothe him with legal authority to act, but may not disregard the testator's appointment and appoint another in his place unless the appointee of the testator is disqualified or fails to qualify. His full powers do not devolve upon him until the court has made the decree of distribution. Likewise, it is true that there is not a complete trust in respect to the residuary estate until distribution. But it does not follow, from the fact that this final step is necessary, that the trust is created by the probate court and it does not follow that the testamentary trus-

tees in these cases did not acquire the residuary estates as trustees under the wills at the deaths of the testators.

In *Gibney* v. *Allen*, 156 Mich. 301; 120 N. W. 811, the court speaks of a trustee having been appointed by the testatrix and states that the probate court has no authority to name another except for the reasons we have indicated above, and states further that the action of the probate court after a trustee has been appointed by the testatrix is only declaratory and affirmatory. See also Beecher on Michigan Law and Practice in Probate Courts, sec. 749. In paragraph 14052 of the Compiled Laws of Michigan, 1915, we find the following:

> If a testator has omitted in his will to appoint a trustee in this state * * * such probate court * * * shall appoint a trustee, who shall have the same powers, rights and duties and in whom the estate shall vest in like manner as if he had been originally appointed by the testator.

We think it is obvious that in Michigan the rights, titles and appointments of testamentary trustees come from the will at the date of death. Because there was a will and because the testator died, a change was wrought from the date of his death. The property later to be distributed became impressed with a trust. The beneficiaries under the testamentary trust from that date forward had certain rights which they did not have before. Their rights were dependent upon a trust estate. The trustees named by the two Dodge brothers were not disqualified for any reason and the ones who finally qualified as trustees were named by these two testators for that purpose. The named trustees acquired certain rights at the moment the testator died, which up to that moment they had not had. Thereafter it was only necessary for them to accept the trust, give bond, and allow the executors reasonable time to administer the estate until they would be entitled to perform their duties as trustees in accordance with the will of the testator. From the date of the testator's death, they, like Brewster, had a right to demand and receive at some time in the future whatever might remain after paying the debts and expenses of the estate. They, like Brewster, at that time acquired a right to have the executors honestly administer the estate and distribute to them their share of the residuary estate. They had a duty to gain possession of the property. Brewster eventually received his bequest in fee. Here, the testamentary trustees representing the trust entity eventually received the legal title, but the *cestuis que trustent* were the beneficial owners. Each was a component part of the trust entity, the taxpayer. There was the same enrichment here at the date of death as there was in the *Brewster* case, but the total enrichment was distributed between those named as testamentary trustees and those named as *cestuis que trustent*.

We do not agree with the petitioners' contention that an immediate bequest to the testamentary trustees was not intended and was not made. The words of each will indicate an intention to make an immediate bequest. Each trust required the trustees to make payments to certain beneficiaries from the date of the testator's death. Thus, it appears that each testator, although he must have known that it would take some time to administer his estate, intended that the trust should relate back to and become operative from the date of his death. Cf. *Poole* v. *Union Trust Co.*, 191 Mich. 162; 157 N. W. 430. There is no indication of an intention to postpone either bequest. Each trust actually realized and received in cash the increase in value of the property over its value at the time of the testator's death. Thus, it reaped the benefit for which the tax is payable. Cf. *United States* v. *Phellis*, 257 U. S. 156; *Taft* v. *Bowers*, 278 U. S. 470. The petitioners point out that the estates, exclusive of the Dodge Brothers stock, were not sufficient as valued at death, to pay debts and expenses. We can not see how this fact would help them, for it would only tend to show that at each testator's death the value of the residuary estate was less than the value of the Dodge Brothers stock, and thus less than the basis already allowed by the Commissioner.

In one of the briefs for the petitioners there is a statement that the court in the *Brewster* case pointed out that Brewster, at the time of the testator's death, had a right to the residue which he could have then disposed of, and the court held this right to dispose of the property to be tantamount to the property itself. The argument was then made that this may not be true of a bequest to a trust. The answer is that the court never made the statement or the holding attributed to it. Contentions are also made that certain things could not be done by or to the testamentary trustees prior to the date of the decree of distribution. However, the same was true of Brewster, and the reason in each case is that the residuary legatee was not entitled to receive the property until the decree of distribution.

The petitioners concede that the time of the death of the decedent is " the time of such acquisition " in a number of cases including real estate acquired by will or intestacy, personal property acquired by specific bequests and personal property acquired by an individual residuary legatee in being at the time of the death of the decedent. But, they argue, it would be a distortion of the statute to hold that testamentary trustees acquire the residue of personal property at death. They point out that there is no residue until the estate is ready for distribution. But as this was true in the *Brewster* case, we can not see that it need be considered a difficulty here. They

further contend, as previously stated, that neither the trusts nor the trustees were in existence or capable of taking until the date of distribution, and, therefore, could not acquire the residue of personalty prior to that time. But if there is any merit in this argument it would seem to apply with equal force had the testator given real estate or specific personal property to form the corpus of this trust. Yet, the petitioners would concede that in either of the latter cases the property would have been acquired at the time of the death of the decedent. Furthermore, the executors were no more in existence at the decedent's death than were these trustees, nevertheless, the basis to executors is the value at the time of the decedent's death.

The petitioners claim that there are certain cases in which it is obvious that the time of acquisition is not the date of the decedent's death. For instance, a bequest to a child born after the death of the testator, or to a corporation thereafter to be formed, could not be acquired at the time the testator died. They cite a number of cases in this connection. But the present cases are not necessarily like the case of a gift to a corporation to be formed in the future. Here the testator actually created the trust by his will. The trust, not the trustees, is the taxpayer. The trustees are only one of the component parts of the taxpayer. They hold legal title to and possession of the property and act for the taxpayer. They never acquired a beneficial interest in the trust property—that goes to the *cestuis que trustent*, who are also a part of the trust. The taxpayer, the trust, acquired at the decedent's death the same thing that Brewster acquired. Thus, the *Brewster* case holds that there can be but one basis in all such cases, the value of the property at date of death. The Commissioner has used this basis in determining the deficiency.

Reviewed by the Board.

*Judgment will be entered for the respondent.*