ANSON EVANS, PHILIP J. NOONAN, AND WALTER T. NOONAN, TRUSTEES, F. R. NOONAN ESTATE TRUST, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 62664. Promulgated January 10, 1934.

*Thomas Gallagher, Esq.*, for the petitioner.
*Arthur H. Fast, Esq.*, for the respondent.

OPINION.

LANSDON: The Board is asked to settle only one issue; viz., What was the fair market value of the block of North American Creamery stock in question when it was acquired by the petitioners? The record discloses a slight confusion as to the date of such acquisition and counsel for petitioners attaches some importance to the fact that it did not physically pass to them until September 25, 1920, although the date of the decedent's death was September 10, 1919. In contemplation of law the corpus of a testamentary trust passes to the trustees on the date of the death of the testator. *Gage v. Brewster*, 280 U.S. 327; *Security Trust Co. et al., Trustees*, 25 B.T.A. 29; affd., 65 Fed. (2d) 877. It follows that gain or loss from the subsequent disposition of the stock must be computed on the basis of its fair market value at September 10, 1919, as provided in section 113 (a) (5) of the Revenue Act of 1928.

The respondent has determined that the fair market value of the 4,250 shares of the stock of the corporation at date of acquisition was $743,750. The petitioners allege that such value was at least $1,468,375. The fact that petitioners received a 100 percent

stock dividend is not material, since they sold the original and dividend shares in a single block, and we shall therefore discuss the share value on the basis of 4,250 shares. The stock in question was closely held by a family corporation and there were no sales at any time sufficiently near the basic date to establish a fair market value thereof, nor was it listed on any stock exchange. It is necessary, therefore, to consider the value of the underlying assets, the opinions of witnesses, and any other competent evidence offered by the parties.

It is stipulated that the net worth of the corporation at December 31, 1919, exclusive of good will, was $1,254,954.26, as represented by tangible assets owned at that time, and that this figure applies to September 10, 1919, the date of acquisition by the petitioners. As there were 5,000 shares of stock outstanding at that date, the value of each share, measured by the net worth of the corporation, was almost exactly $250 per share. The respondent's determination is $175 per share and the petitioners contend for a value of $435.

The evidence discloses that in its capital stock tax returns for the fiscal years ending at June 30, 1916, 1917, 1918, 1919, and 1920, the corporation reported the value per share of its stock for such years in the respective amounts of $90, $96, $125, $143, and $188. On April 23, 1920, appraisers appointed by the probate court determined a value per share of $160, and such valuation was used in the settlement of estate taxes due to the State of Minnesota and in the Federal estate tax return which the executors filed within one year of the date of the decedent's death. Upon audit of such return the respondent increased the reported valuation to $175 per share.

In addition to the stipulation the petitioners introduced witnesses who gave their opinions as to the fair market value of the stock in question at the basic date. P. J. Noonan, who succeeded his father in the management of the corporation, was an executor of the estate, and is a trustee and one of the petitioners here, was of the opinion that at such date the stock was worth $400 per share. Thomas A. Roden, long connected with the firm of Wells, Dickey & Co., which deals in securities of private corporations, opined that the stock was worth 15 times its average earning capacity over a period of years, or about $450 per share. His opinion is based on his general knowledge of the values of stock and on the financial condition of the corporation, but he has no special information about the creamery business. Marcus P. Angland, a member of a firm of stock brokers, was of the opinion that the stock was worth from $425 to $450 per share on the basic date. He based his conclusion on the earnings and assets of the corporation and was influenced by the fact that the stock in question was a controlling interest.

On behalf of the respondent each of the two appraisers who fixed the value of the stock at $160 per share in 1919 testified that his original estimate was based on facts considered at the time of the appraisal and that he knew of no changes in the corporation or the market that would require him to make any different estimate. Each considered the figure arrived at by the appraisal as a fair valuation as of that date. One of such appraisers is the first vice president and the trust officer of the First National Bank & Trust Co. of Minneapolis. The other is connected with the Farmers & Mechanics Bank of that city and is a practicing attorney in Minneapolis.

On the basis of the testimony summarized above and of the stipulated facts, the petitioners ask the Board to find that at September 10, 1919, the stock in question had a fair market value of at least $435 per share. It is obvious that they rely largely on the concededly strong financial condition of the corporation, together with its history and undisputed success as factors in creating good will as an asset, in addition to the tangible properties. It must be borne in mind, however, that what we are concerned with is the fair market value of the stock at the basic date, rather than actual net worth of the corporation as represented by its tangible and intangible assets, less liabilities. It is clear that until after the sale thereof no one connected with the corporation regarded the stock as worth anything like the value now claimed. Nor does the sale on April 1, 1929, corroborate the value as of September 10, 1919, which is now claimed. Such sale was made in a period of great commercial activity, at least six months before the now historical decline in the value of corporate stocks began. On December 31, 1919, the book value of the stock, which did not include any good will, was $250 per share. After several years of additional prosperous operation it was sold for approximately $290 per share, a price that indicates that the willing purchaser thereof paid little or nothing for the good will which petitioners contend was worth $480,813.87 at September 10, 1919. Upon due consideration of all the facts and estimates of value, we are of . the opinion and find as a fact that at September 12, 1919, the stock in question had a fair market value of $250 per share.

On brief counsel for the petitioners argues strenuously that the valuations placed on the stock for capital stock and estate tax purposes are inadmissible as evidence. The Board has never considered such valuations to be conclusive, but they are evidence that must be overcome by the taxpayer claiming higher values for tax purposes in subsequent years. *Williams* v. *Commissioner*, 44 Fed. (2d) 467; affirming *David Williams*, 15 B.T.A. 227.

*Decision will be entered under Rule 50.*