Estate of Virginia Evans Devereux, deceased, Walter Evans Devereux, Helen Z. M. Rodgers and Cecil B. Wiener, Executors v. Commissioner.
Estate of Virginia Evans Devereux v. Commissioner
Docket No. 13016.
United States Tax Court
1948 Tax Ct. Memo LEXIS 67; 7 T.C.M. (CCH) 748; T.C.M. (RIA) 48208; October 18, 1948
*67 Ralph M. Andrews, Esq., and Helen Z. M. Rodgers, for the petitioner. J. Frost Walker, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: The Commissioner determined a deficiency of $26,113.12 in the income tax of petitioner for the calendar year 1944. The deficiency resulted from a reduction by the Commissioner in the basis returned by petitioner for computation of capital gain on the sale in 1944 of an undivided one-half interest in fee in certain improved real property located at 554-562 Main Street, Buffalo, New York. The parties agree that the basis for gain or loss on the sale is the fair market value of an undivided one-half interest in fee in the property on June 15, 1938, the date of decedent's death, and that the sole issue is the amount of this fair market value. The stipulation of facts filed by the parties is incorporated herein by reference as part of our findings of fact. Findings of Fact The petitioner is the Estate of Virginia Evans Devereux, deceased, the duly appointed executors of her will being Walter Evans Devereux, Helen Z. M. Rodgers, and Cecil B. Wiener. Decedent, a resident of Buffalo, died June 15, 1938. The *68 income tax return of the estate for 1944 was filed with the collector of internal revenue for the twenty-eighth district of New York on March 15, 1945. At the time of her death the decedent, Virginia Evans Devereux, was seized of an undivided one-half interest in fee in three adjoining parcels of improved real property, Nos. 554-562 Main Street, 359-361 Pearl Street and 363-367 Pearl Street in the City of Buffalo, New York. These properties by the terms of decedent's will passed, together with all of the other property in her estate, to her executors in trust for certain beneficiaries named therein. The executors continued to hold title to an undivided one-half interest in the properties referred to until May 26, 1944, on which date all three parcels of said properties were sold to one Katherine F. Ladd of Boston, Massachusetts, for a gross sales price of $1,066,425. The properties were subject, however, at the time of sale to mortgages aggregating $320,982.75, making a net sales price of $745,442.25, one-half of which, or $372,721.13, was allocable to the one-half interest owned by petitioner. Petitioner's income tax return for 1944 showed this net sales price of $372,721.13 *69 and the basis of petitioner's net interest in the three properties as $272,951.50. Petitioner's net interest had originally been returned for the estate tax upon the death of decedent at this same valuation of $272,951.50. (The returned gross valuation of 554-562 Main Street alone for estate tax had been $353,331.50.) Alice M. Evans Bartlett, sister of decedent and originally owner of the other one-half interest in the three properties, died December 25, 1936, seized of a one-sixth interest in 554-562 Main Street only. She had conveyed to her two children in 1934 two-thirds of her interest in that property and in 1933 all of her interest in the two Pearl Street properties. In the Bartlett estate a much lower valuation was placed on 554-562 Main Street than in the Devereux estate. Upon being informed of this, petitioner filed a protest on the estate tax which resulted in a refund to petitioner, based on a lowering of the gross valuation of the Devereux interest in 554-562 Main Street from $353,331.50, as originally returned, to $248,879. Petitioner returned on the income tax return for 1944 the former figure of $353,331.50 as the basis for computing gain on the sale in 1944 of an *70 undivided one-half interest in 554-562 Main Street. Respondent used the latter figure of $248,879 as the basis, and notice of deficiency in income tax for 1944, based on this valuation, was mailed to petitioner November 27, 1946. The following table shows the figures for the respective valuations as above explained: Fair Market Value on June 15, 1938, of Undivided One-half Interest in 554-562 Main Street. In Petitioner's Estate Tax Return
$353,331.50
In Petitioner's Protest, resulting in
refund by Commissioner of a por-
tion of estate tax
248,879.00
In Petitioner's Income Tax Return,
1944
353,331.50
In Respondent's Notice of Deficiency
in Income Tax for 1944
248,879.00
554-562 Main Street is situated on the west side of Main Street in Buffalo between Huron and Chippewa Streets. The Main Street frontage is 95.48 feet. (The Main Street frontage was returned both for the estate tax and for the 1944 income tax as 94.38 feet, this being the figure given in the deed by which the property was conveyed to Alice M. Evans Bartlett and decedent in 1896. Subsequent to 1944 a survey revealed the actual frontage to be 95.48 feet. No addition to the basis is claimed *71 by petitioner as a result of this increase.) The depth is 115 1/2 to 122 1/2 feet. Adjoining the Main Street property in the rear are the two Pearl Street properties, 363-367 Pearl Street and 359-361 Pearl Street, also owned by decedent and sold in 1944. 363-367 Pearl Street is situated on the east side of Pearl Street with frontage of about 55.48 feet on Pearl Street and depth of 108 1/2 to 115 1/2 feet. 359-361 Pearl Street is situated on the east side of Pearl Street, adjoining 363-367 Pearl Street on the north, with frontage of about 40 feet on Pearl Street and depth of 115 1/2 feet. 554-562 Main Street in 1938 had a fourstory building running back 115 feet constructed in 1895. 363-367 Pearl Street in 1938 had a three-story building constructed in 1911 to 1912, which has since been increased to four stories. The two buildings were joined in the rear by a four-story structure, which extended to a depth of 20 feet across the rear of 359-361 Pearl Street. The remainder of 359-361 Pearl Street was vacant in 1938 and used as a parking lot. The buildings were constructed of brick, steel and reenforced concrete. The Main Street front was limestone with metal ornamentation. The Pearl *72 Street front was plain brick. The buildings were kept in excellent condition, well painted, sprinkled throughout, with fire-protective stairs. There were four elevators, two Otis and two Warsaw, and two low pressure boilers. Flint & Kent, a high class department store, occupied the Main Street building from 1896 and the other buildings as they were acquired by the owners. The property was subject to leases and a supplemental agreement. The leases and supplemental agreement provide for payment by the lessee of taxes, mortgage interest, insurance premiums, repairs and ordinary alterations, and for stipulated net cash rentals payable to the owners. The cash rental actually received by decedent and her executors for her one-half interest in the three properties in 1938 was $21,020.99. The buildings were located in the best retail section of Buffalo, namely, south of Chippewa Street and north of Eagle Street on the west side of Main Street. The value of property on the east side of this portion of Main Street was only about 60 per cent of that on the west side of Main Street, where 554-562 was located. The difference is based on the difference in the volume of pedestrian traffic. *73 The assessed valuation of 554-562 Main Street for 1938 was: Land
$664,920
Improvements
107,350
Total
$772,270 The basis of assessed valuations in the city of Buffalo is 100 per cent. The nearest sale from the point of view both of time and of location was the sale of the Nisley property, No. 564 Main Street, immediately adjacent to 554-562 Main Street on the north, on the same side of Main Street. This property, with 22.65 foot frontage on Main Street and depth of 115 1/2 feet, with no access to Pearl Street, was sold on June 26, 1935, to Ethel May Duffy by Marine Trust Company, as Trustee, for $157,000. The assessed valuation of the building was $19,310. The building was small and old-fashioned, looking like a remodeled residence, and the upper floors were in poor shape. Values were higher in 1938 than in 1935 because business was better. The usable space which brings in a return is much greater proportionately in a large than in a small building, since fewer elevators and walls are needed in the large building, proportionately, than in the small building. In Buffalo there are only four pieces of property with frontage of approximately 100 feet on the west *74 side of Main Street between Eagle and Chippewa Streets. The fair market value of an undivided one-half interest in fee in 554-562 Main Street on June 15, 1938, was $353,331.50. Opinion The sole question before this Court is the determination of the basis for computation of capital gain on the sale in 1944 of an undivided one-half interest in fee in certain improved real property located at 554-562 Main Street, Buffalo, New York. The property was acquired by petitioner, the Estate of Virginia Evans Devereux, upon the death of decedent, Virgina Evans Devereux, on June 15, 1938. By statute the basis for the computation of capital gain is the fair market value on that date. [1] Other adjoining properties that passed to petitioner as decedent's death were sold under the same sale in 1944, but their value is not in dispute. Accordingly, the sole issue here is the fair market value on June 15, 1938, of decedent's undivided one-half interest in 554-562 Main Street. *75 Petitioner contends that the fair market value was $353,331.50. It was this figure which was originally returned by petitioner for the estate tax. Respondent determined that the fair market value was $248,879 and sent notice of deficiency in income tax for 1944 in accordance with that determination. That was the figure used by petitioner in its protest on the estate tax and agreed to by the Commissioner, resulting in a refund to petitioner of a portion of the estate tax. Actually, therefore, respondent is relying for the income tax on the final estate tax valuation, while petitioner is seeking to establish another valuation. We are not bound by the valuation for estate tax purposes. Stella H. McConnell, 29 B.T.A. 32; Anson Evans et al., Trustees, 29 B.T.A. 710; May Rogers, 31 B.T.A. 994; Elizabeth G. Augustus, 40 B.T.A. 1201; Malcolm Clifton Davenport, 6 T.C. 62. In Northport Shores, Inc., 31 B.T.A. 1013, the Board said: "Unless Petitioners are estopped, the determination of the questioned value at the basic date by the respondent for estate tax purpose is not conclusive, but raises only a prima *76 facie presumption of fact and therefore is rebuttable by convincing evidence. * * * "Respondent suggests that failure of the record to disclose an offer by petitioners to pay the additional Agnes Hall Estate taxes which would result from the present determination of any higher value for the Hall property at January 5, 1925, implies a fatal lack of bona fides by petitioners. * * * But, in any event, we do not have that estate before us, nor do we have general equitable jurisdiction. Our only present pertinent inquiry is the correct income tax liability for these petitioners for 1929." There is no claim of an estoppel here nor are the necessary elements present on which to base one. Respondent raised the issue of estoppel in his amended answer, but in his brief respondent states, "The issue of estoppel, as such, is abandoned." Hence petitioner is not prevented from proving the fair market value of decedent's undivided one-half interest in 554-562 Main Street, Buffalo, New York, on June 15, 1938. That is the sole question in dispute here and we pass to a consideration of the evidence on that question. Petitioner introduced two real estate experts who testified that the fair market *77 value on June 15, 1938, of decedent's interest in the property was even greater than the value here sought to be established by petitioner. One stated that in his opinion the fair market value of the one-half interest of the Devereux Estate was $359,294 on the basis of the frontage shown in the return (and on the basis of the actual frontage $362,986.50). In arriving at this conclusion he took into consideration the recent sales that had been made in the vicinity, the size of the property, the location, the net return, the fact that the business was one of the largest of Buffalo's growing businesses, the trend to the north, the economic depression, the competition of outlying stores with parking space, and took what he thought was a reasonable fair value, based on his own experience. This expert had also, on February 2, 1939, arrived at an identical June 15, 1938, valuation for the property based on the frontage shown in petitioner's estate tax return, and his appraisal at that time had been annexed to the estate tax return. Petitioner's other expert valued the one-half interest of the Devereux estate at $369,947.50 on the basis of the actual frontage. (On the basis of the frontage *78 shown in the estate tax return the appraisal would be $366,372.50.) He took into consideration capitalization of net rentals, replacement cost, sale of the adjacent Nisley property, the location, the future earning power of the property, pedestrian traffic, the economic depression and the competition of outlying stores with parking space. Respondent introduced no witnesses but relied on the presumption of correctness of his determination here and of the final determination of value for the estate tax. Respondent criticizes the testimony of petitioner's experts because they valued the undivided one-half interest of the Devereux estate in the Main Street property at exactly one-half the valuation for the whole property. He maintains that an undivided interest is worth less than half of the value of the total property, because of the possibility of a partition suit. But, as was said in Cooke (1925), 2 B.T.A. 126, "There is nothing in the record to indicate that there are in this case any special conditions which reduce the value of a fractional part, or that the value of the fractional part is less than the proportionate part of the value of the whole." There is no showing *79 here of dissension between the owners or of local real estate practice of selling fractional interests at a discount. Therefore, we cannot hold that the value of decedent's one-half interest was worth less than half the value of the whole. We have carefully considered all the facts in evidence concerning this property, and the appraisals made by the two real estate experts who testified, as well as the reasoning, facts and experience on which those appraisals were based. It is our judgment that the fair market value of decedent's undivided one-half interest in fee in 554-562 Main Street, Buffalo, on June 15, 1938, was $353,331.50. It follows that respondent's determination of a deficiency in income tax for 1944 is in error. Decision will be entered for the petitioner. Footnotes
1. INTERNAL REVENUE CODE. SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS. (a) Basis (Unadjusted) of Property. - The basis of property shall be the cost of such property, except that - * * *
(5) Property transmitted at death. - If the property was acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent, the basis shall be the fair market value of such property at the time of such acquisition. * * *↩