Clarence Duffy and Anna Duffy v. Commissioner.
Duffy v. Commissioner
Docket No. 35865.
United States Tax Court
1954 Tax Ct. Memo LEXIS 301; 13 T.C.M. (CCH) 134; T.C.M. (RIA) 54049; 3 Oil & Gas Rep. 876; February 12, 1954
Linwood Connellee, Esq., 615 West Main Street, Ottawa, Ill., for the petitioners. Richard D. Hobbett, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies in income taxes against petitioners for each of the years 1944, 1945, and 1946, as follows: Year
Deficiency
1944
$1,641.53
1945
1,680.19
1946
1,424.24
The issues to be decided are: 1. The proper amount of depletion allowable by section 23 (m) and the appropriate regulations as a deduction from sand mining-royalties received in 1944, 1945, and 1946. 2. Whether payments of $10,000 in 1944 and $10,500 in 1945 were ordinary income to petitioners as royalties under a coal mining lease or capital *302 gains from the sale of coal in place. 3. If the payments received under the coal mining lease were ordinary income, the proper amount of depletion allowable. 4. Whether petitioners are entitled to a deduction of $105.00 in 1944 for depreciation on a tractor. All other issues presented by the pleadings were waived by petitioners. Findings of Fact Some of the facts were stipulated and they are hereby found. Petitioners, husband and wife, filed their joint income tax returns for the years involved with the collector of internal revenue for the first district of Illinois. Petitioner Clarence Duffy, hereinafter called "petitioner," is the owner of a tract of land located in LaSalle County, Illinois, containing 130.35 acres. He acquired such property by devise from Mary E. Duffy, who died testate on February 12, 1931. Petitioner, as the executor of Mary E. Duffy's estate, filed with the Probate Court of LaSalle County an inventory of the property owned by the decedent at the time of her death. Such inventory listed the value of the 130.35 acres at $16,000. This appraisal was arrived at in a conference of an attorney, Al C. Clapsaddle, a Judge Mesion, both reputable persons *303 in the community, and all of the heirs of Mary E. Duffy, including petitioner. At the time, petitioner was also of the opinion that the property was worth $16,000 and he would not have paid more for it himself had he been a prospective purchaser. Petitioner revised his opinion of the value of the property when he and his wife were able to sell the coal in the land in 1944. No sand was removed from petitioner's property between February 12, 1931 and March 2, 1936. On March 2, 1936, petitioners leased the southernmost 30 acres of the 130.35-acre tract to the Illinois Silica Sand Company for the purpose of permitting that company to mine sand. About 71,874 tons of sand were removed from the 30 acres under this lease between March 2, 1936 and December 31, 1940. About 619,196.11 tons of sand were sold between January 1, 1941 and December 31, 1952. There are not less than 100,000 additional tons of commercially recoverable sand in a strip of land on a bluff at the southernmost edge of his property where no coal strippings are piled. There is also some sand north of that strip, even under the coal strippings. There is no evidence showing how much more recoverable sand there is north *304 of the strip containing the 100,000 additional tons, the number of tons of sand removed between March 2, 1936 and December 31, 1943, the recoverable sand left in the 30-acre tract as of January 1, 1944, nor the amount of depletion for the years prior to 1942. Petitioners deducted depletion in 1942 and 1943 at the rate of 2 1/4 and 2 1/2 cents per ton, respectively. On August 30, 1944 petitioners entered into a "Coal Mining Lease" with the Osage Coal Company giving that company the right to strip mine coal from the southernmost 50.35 acres of petitioner's 130.35-acre property. The agreement was for a term of two years and provided for a "royalty" of 25 cents to be paid to petitioners for each ton of coal removed, with a "total minimum royalty" of $20,500 to be paid in two installments, $10,000 on August 30, 1944 and $10,500 on January 10, 1945. Such amounts were in fact paid on such dates, and no other royalties were ever paid by the Osage Coal Company to petitioners. The "Coal Mining Lease" further provided that the named "lessee" should carry on its stripping operation continuously and in a miner-like and workman-like manner, and that the "lessee" could not assign or sublet the *305 lease without petitioners' written consent. The "Coal Mining Lease" contained no words of grant as present or future conveyance and conveyed nothing to the lessee. Its provisions are those normally found in a lease. Petitioners reported the $20,500 received pursuant to the terms of the "Coal Mining Lease" as the proceeds from the sale or exchange of a capital asset. They reported a total adjusted basis of $6,307.71 for such alleged sale. Respondent determined the $20,500 to be ordinary income from royalties and allowed the entire basis claimed by petitioners as depletion. On April 14, 1915, Mary E. Duffy and one C. W. Wilkinson entered into an agreement covering minerals on some of the same land, which provided, among other things, for a royalty of 50 cents per ton of coal removed. On March 1, 1928, the owners of land adjacent to that involved entered into a twenty-five year agreement with the American Silica Corporation, which provided for a royalty of 25 cents per ton of coal removed. Petitioner now has 80 acres of farm land left which produce 45 bushels of corn per acre and contain no coal or sand in commercial quantities. The 50.35 acres of land that were stripped for coal *306 are worthless for farming. No distinction was made in the estate inventory valuation between the 50.35 acres and the 80 acres which now remain for farming. On February 12, 1931, the fair market value of the 130.35-acre tract acquired by petitioner including all mineral deposits was not materially in excess of $16,000. When petitioners filed their tax return for 1944, petitioner owned a tractor which he had purchased in 1937 for $840.00 and had until then depreciated on the basis of an estimated life of 8 years or $105.00 per year. Petitioner did not include this depreciation on the 1944 return. The $105.00 depreciation was not deducted by respondent when he added $539.72 additional farm income for 1944. In the deficiency notice addressed to petitioners, respondent explained his adjustments for 1944 as follows: "(a) You reported income from farm in the amount of $695.08 on your return, whereas you should have reported income of $1,234.80 from such source. Accordingly, your income is increased by $539.72 under sections 22 (a) and 23 of the Internal Revenue Code. See Schedule 1 for details. "(b) It is held that you received ordinary income from royalties *307 for coal mined in 1944 in the amount of $10,000.00 which is taxable income under section 22 (a) of the Internal Revenue Code. The allowance for depletion for coal removed from your land has been determined under the provisions of section 23 (m) of the Internal Revenue Code and the regulations prescribed under that section in (M)-2 section 29.23 (m)-2 of Treasury Regulations 111. It is held that depletion for coal in 1944 does not exceed the total of $3,076.93, found by reference to the fair market value of the property at the time acquired by devise or inheritance, in accordance with section 113 (a) (5) of the Internal Revenue Code. Deduction for expense in the amount of $189.00 has been allowed. Your contention that the gain is a long term capital gain has been denied. "(c) You reported income from sand land royalties in the amount of $1,501.57, whereas you should have reported income of $2,666.29, from such source. Accordingly your income is increased by $1,164.72 under section 22 (a) of the Internal Revenue Code. Such amount represents the difference between depletion *308 deducted in the amount of $1,539.51 and depletion allowable of $374.79 (68,568.6 tons at $.0054659 per ton). "The allowance for depletion has been determined for silica sand removed from your land under the provisions of section 23(m) of the Internal Revenue Code and the regulations prescribed under that section in section 29.23(m)-2 of Treasury Regulations 111. It is held that the unit basis for depletion does not exceed $0.0054659 per ton of sand removed, found by reference to the fair market value of the property at the time acquired by devise or inheritance, in accordance with section 113 (a) (5) of the Internal Revenue Code." The "Coal Mining Lease" was in fact a lease and royalties therefrom were ordinary income. Petitioners are not entitled to any greater depletion on coal or sand than that determined by respondent. Petitioners are entitled to a deduction in 1944 for depreciation on the tractor purchased by petitioner in 1937. Opinion I and III. The depletion claimed for the sand and coal royalties is unit depletion which requires for its computation cost or other basis, adjustments for depletion *309 previously allowed or allowable, and determination of the units remaining to be removed. Regulations 111, sec. 29.23 (m)-2. See Burnet v. Thompson Oil & Gas Co., 283 U.S. 301; Hunter Coal Co., 2 B.T.A. 828. Without all these elements, the amount to which petitioner would be entitled in a given year cannot be properly calculated. But aside from the burden of proof, even the single element of basis, which seems to be the primary field of controversy, is shown to be the figure presumably used by respondent. The property was acquired by petitioner by inheritance. Its original basis would be the fair market at the date of decedent's death. Sec. 113 (a) (5), I.R.C.; Harriet M. Bryant Trust, 11 T.C. 374. Adjustment is then necessary for subsequent depletion. Opinion testimony, the schedule filed in probate proceedings, see Anson Evans et al., Trustees, 29 B.T.A. 710, 716, the actual profit made 13 years after the acquisition, see Reinecke v. Spalding, 280 U.S. 227; Dunn & Baker, Inc., 30 B.T.A. 663, affd. (C.A. 9) 80 Fed. (2d) 1010, the depletion deducted in prior years, and *310 amounts originally employed in the tax returns all point to the correctness of respondent's action. We have found the facts accordingly. II. Petitioner's coal mining "lease" was clearly such, and not a sale. The royalties received were consequently ordinary income and not capital gain. Lincoln D. Godshall, 13 T.C. 681; Bankers Pocahontas Coal Co. v. Burnet, 287 U.S. 308er 31, 1953). IV. Respondent has offered no argument in either his original or reply brief with respect to petitioner's claimed deduction for depreciation on his tractor nor does respondent object to any of petitioner's requested findings in this regard. We accordingly regard this issue as having been abandoned by respondent. Decision will be entered under Rule 50.