MICHAEL J. GUINAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Guinan v. Commissioner
Docket No. 18387-85
United States Tax Court
T.C. Memo 1991-190; 1991 Tax Ct. Memo LEXIS 217; 61 T.C.M. (CCH) 2507; T.C.M. (RIA) 91190; April 29, 1991, Filed *217 Decision will be entered under Rule 155. Michael J. Guinan, pro se. Steven Blanc and Steedly Young, for the respondent. WRIGHT, Judge. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION By notice of deficiency dated March 15, 1985, respondent determined the following deficiencies in and additions to petitioner's Federal income tax: Additions to Tax
Year
Deficiency
Sec. 6653(b) [1]
Sec. 6653(b)(1)
Sec.6653(b)(2)
1977
$ 34,420.11
$ 17,210.05
n/a   n/a
1978
32,686.19
16,343.10
n/a   n/a
1979
32,992.95
18,511.48
n/a   n/a
1980
40,087.84
22,047.42
n/a   n/a
1981
11,832.00
7,539.05
n/a   n/a
1982
7,912.40
n/a  $ 6,021.20
* By an Amendment to Answer filed on December 16, 1987, respondent claimed an increase in *218 the deficiencies in Federal income tax for the years 1977 and 1980 in the amounts of $ 31,646.89 and $ 14,811.16, respectively, and an increase in the additions to tax pursuant to section 6653(b) for the years 1977 and 1980 in the amounts of $ 15,833.94 and $ 7,385.59, respectively. After concessions by respondent, the issues for decision are: (1) Whether the statutory notice of deficiency was arbitrary and capricious so that the burden of going forward with the evidence is placed on respondent; (2) whether petitioner omitted taxable income in the amounts of $ 120,267, $ 31,867, $ 41,887, and $ 92,816 from his legal practice for the taxable years 1977 through 1980, respectively, as determined by respondent through the expenditures method of reconstruction of income; (3) whether petitioner omitted taxable interest income in the amounts of $ 29,577 and $ 20,011 for the taxable years 1981 and 1982, respectively, as determined by respondent through the specific items method of reconstruction of income; (4) whether petitioner is liable for the addition to tax for fraud for each of the taxable years 1977 through 1982; and (5) whether the statute of limitations bars assessment and collection *219 of deficiencies and additions to tax for taxable years 1977 through 1980. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, first supplemental stipulation of facts, second supplemental stipulation of facts, and attached exhibits are incorporated herein by this reference. General
Petitioner resided in Chicago, Illinois, at the time he filed his petition. Petitioner was licensed to practice law in Illinois for each of the years in issue. Petitioner married Else Guinan in 1961 and remained married to her until their divorce in 1982. Petitioner met Loretta Guinan (Lori) in June 1976, and married her in January 1984. Beginning in 1976, petitioner was involved in an extramarital relationship with Lori. From June 1976 throughout 1982, petitioner completely supported Lori with the exception of $ 1,200 in modeling income and $ 600 in income as a temporary secretary which she earned from 1979 through 1982. Petitioner provided Lori with an allowance of $ 175 to $ 250 per week from 1977 through 1982. The allowance was generally paid in cash. Lori used the allowance on items such as lunch and clothing. Lori did not file Federal income tax returns *220 or have substantial banking activity during the years 1977 through 1982. Petitioner's legal practice consisted primarily of the representation of clients charged with criminal violations. Petitioner received a portion of his legal fees in the form of checks which were entered in a ledger and deposited in the bank. However, the majority of his fees were in cash. Petitioner also received jewelry and two automobiles as compensation for legal services. His customary fee for representing a client in Federal court was $ 15,000, while his customary fee for State court was $ 6,000 to $ 10,000. Petitioner's secretaries maintained detailed records of all expense items relating to his law practice. They also assisted petitioner in preparing the expense portions, but not the income portions, of petitioner's Federal income tax returns. Petitioner never instructed his secretaries on procedures for keeping records of cash received from clients. Petitioner maintained a record of income earned from his practice on legal-sized sheets of paper and on the back of used phone message slips which he kept hidden in his office. In September 1978, petitioner destroyed every criminal client's legal-sized *221 sheet of paper, eliminating the only record of cash payments of legal fees. Also in September 1978, petitioner destroyed bank records, receipts, and cancelled checks. In addition, petitioner erased the income which was recorded on used phone message slips. After a client made a cash payment of legal fees at petitioner's office, he immediately went to a bank and placed it in a safe deposit box. Early in 1982, petitioner informed his secretary that he was destroying evidence of his income and that respondent would never "catch him." In addition, petitioner told Lori that he knew "how to get around the Internal Revenue Service." Petitioner used various aliases during each of the years at issue, including Ray Berg, Alphonse Gonzales, Clark Kent, Clara Knudsen, Samuel Matyas, Ray Pladick, Robert Redford, George Reicher, George Weber, David J. Griffin, Marie Weber, Frutan Buildings, GBG Enterprises, Mikkelrev Enterprises, Milor Enterprises, Moonraker Enterprises, Clayton Industries, and Platon Industries. Petitioner forged many signatures, including those of individuals who actually existed. Petitioner would at times become confused as to which identity he was using. On September *222 20, 1985, petitioner was convicted of six counts of willfully filing false Federal income tax returns, knowing and believing that his adjusted gross income was substantially greater than the amount he reported, in violation of section 7206(1) for the taxable years 1977 through 1982. Petitioner was also convicted of knowingly failing to appear for trial and of falsely representing Social Security numbers with intent to deceive. Petitioner's Federal income tax returns were filed on the following dates: Taxable Year
Date Filed
1977
04-15-78
1978
05-21-79
1979
06-15-80
1980
06-15-82
1981
10-01-82
1982
04-01-84
Reconstruction of Income for Taxable Years 1977 Through 1980
In reconstructing petitioner's income for taxable years 1977 through 1980, respondent began his computation with petitioner's total known expenditures for the year. To this figure was added the increase in petitioner's bank account balance over the year. Respondent then subtracted all nontaxable sources of funds to arrive at the net expenditures for the year. After subtracting miscellaneous adjustments, respondent arrived at petitioner's adjusted gross income for the year, from which he subtracted *223 the adjusted gross income per petitioner's Federal income tax return to arrive at the omitted income for that year. Respondent analyzed all of petitioner's bank accounts for the years 1977 through 1980, and determined that petitioner had $ 3,000 cash on hand on January 1, 1977. Respondent then thoroughly searched for any nontaxable items of income received by petitioner during each year. The amounts of omitted income for the years 1977 through 1980 are $ 120,267, $ 31,867, $ 41,887, and $ 92,816, respectively. 1977
Petitioner's total balance of all of his bank accounts increased $ 91,067 from December 31, 1976, to December 31, 1977. Petitioner made the following expenditures in taxable year 1977: Expenditure
Amount 1.
Purchase of condominium at
155 Harbor Drive, Unit 3805
$  54,383
2.
Maintenance fee for Unit 3805
104
3.
Utilities at 709 E. 3rd Street
560
4.
Purchase of boat (Mikkelrev II)
31,500
5.
Insurance expense for boat
608
6.
Repairs to Mikkelrev II
1,324
7.
Charge cards
2,244
8.
Income tax returns
7,899
9.
Loans
7,316
10.
Purchase of 200 shares
White Motor Company
1,678
11.
Purchase of 1977 Cadillac auto
6,800
12.
Insurance payments to
Allstate Insurance
1,299
13.
Lori (cash allowance)
9,100
14.
Misc. expenses
6,780
$ 131,595
*224 Petitioner purchased unit 3805 because Lori needed a place to live and he needed "to hide some cash." Petitioner purchased the condominium in the name of a friend, Samuel Matyas. Lori paid no rent or assessments for use of the condominium. Title to unit 3805 was later transferred to a corporate shell. Petitioner received the following nontaxable items of income in taxable year 1977: Nontaxable Item
Amount
Cash
$  3,000
Estate distribution from
Elizabeth Guinan (mother)
21,522
Loan proceeds
279
Insurance proceeds
51,796
$ 76,597
Petitioner incurred a short-term capital loss of $ 2,000 and depreciation expense of $ 128 in 1977, for which he was given credit by respondent. Petitioner reported gross receipts of $ 58,885, gross income of $ 27,088.56, and adjusted gross income of $ 23,669.56 on his 1977 Federal income tax return. However, in a loan application dated December 20, 1976, petitioner reported an annual salary of $ 65,000. In addition, petitioner attached to a letter dated September 6, 1978, addressed to Olympic Savings & Loan, a supposed copy of his 1977 Federal income tax return which reported adjusted gross income of $ 63,566. 1978
The balance *225 of all of petitioner's bank accounts increased by $ 76,711 from December 31, 1977, to December 31, 1978. Petitioner made the following expenditures in taxable year 1978: Expenditure
Amount 1.
Maintenance fee for Unit 3805
$   1,413
2.
Utilities at 709 E. 3rd Street
555
3.
Purchase of 37 Windsor
188,938
4.
Insurance expense for boat
573
5.
Income tax returns
4,404
6.
Loans
5,658
7.
Insurance payments to
Allstate Insurance
614
8.
Payment to E. Weber
18,000
9.
Credit Cards
5,847
10.
Lori (checks)
650
11.
Lori (cash allowance)
9,100
12.
Itemized expenses
6,731
$ 242,483
Petitioner received the following nontaxable items of income in taxable year 1978: Nontaxable Item
Amount Loan proceeds
$ 230,303
Insurance proceeds
3,789
Stock sales
8,471
$ 242,563
Petitioner sold 600 shares of Bally stock held in his name in 1978 at a gain of $ 7,310.38. Petitioner sold another 600 shares of Bally stock held in the name of Clara Knudsen, his former mother-in-law, in 1978 at a gain of $ 9,454. Clara Knudsen was unaware that her name was being used in purchasing and selling the Bally stock. Also in 1978, petitioner sustained an $ 11,500 long-term capital *226 loss on shares of Marine Resources, as well as $ 128 of depreciation expense. These transactions, combined with petitioner's 1977 capital loss carryover, created a 1978 capital gain of $ 5,264 and a corresponding deduction under section 1202 of $ 1,493. Petitioner was given credit by respondent for the $ 1,493, as well as the depreciation, a capital loss carryover of $ 2,279, and a $ 11,500 capital loss. Petitioner reported gross receipts of $ 64,380, gross income of $ 33,166, and adjusted gross income of $ 29,365 on his 1978 Federal income tax return. 1979
The balance of all of petitioner's bank accounts decreased $ 55,634 from December 31, 1978, to December 31, 1979. Petitioner made the following expenditures in taxable year 1979: Expenditure
Amount
1.
Maintenance fee for Unit 3805
$   1,604
2.
Purchase of condominium at
155 Harbor Drive, Unit 5108
17,500
3.
Utilities at 709 E. 3rd Street
161
4.
Sales expenses of 709 E. 3rd Street
13,076
5.
Insurance expense (Mikkelrev II)
327
6.
Purchase of boat (Mikkelrev III)
102,921
7.
Insurance expense (Mikkelrev III)
1,236
8.
Repairs (Mikkelrev III)
5,477
9.
Operating Expense (Mikkelrev III)
7,054
10.
Travel (Bahamas)
24,105
11.
Income tax return
4,441
12.
Loans
116,604
13.
Trip for Else Guinan
1,189
14.
Allowance for Else Guinan
3,000
15.
Insurance payments to
Allstate Insurance
1,777
16.
Purchase of 1979 Chevrolet auto
5,032
17.
Commodity seat expense on
Mid America Exchange
300
18.
Loans
2,000
19.
Medical insurance
3,717
20.
Lori (checks)
1,995
21.
Lori (cash allowance)
4,575
22.
Credit Cards
8,301
21.
Itemized deductions
5,520
$ 331,912
*227 Petitioner received the following nontaxable items of income in taxable year 1979: Nontaxable Item
Amount
Loan proceeds
$   3,370
Stock sales
3,722
Property sales
183,717
Loan payments
2,000
$ 192,809
Also in 1979 petitioner sold real property located at 709 Hinsdale, Crystal Lake, with an adjusted basis of $ 13,717 for $ 28,000. Petitioner realized a long-term capital loss of $ 610 on the sale of shares of White Motor Corp., in addition to a longterm capital gain of $ 2,850 on the sale of American Financial Corp. stock warrants. Finally, peititioner sustained a depreciation expense of $ 60. Petitioner was given credit for a long-term capital gain deduction of $ 9,914, as well as the depreciation expense. Petitioner reported gross receipts of $ 60,237, gross income of $ 32,383.54, and adjusted gross income of $ 31,602.24 on his 1979 Federal income tax return. However, on a brokerage account information form dated September 17, 1979, petitioner reported annual earnings of "over $ 100,000." 1980
The balance of all of petitioner's bank accounts increased $ 4,061 from December 31, 1979, to December 31, 1980. Petitioner made the following expenditures in taxable *228 year 1980: Expenditures
Amount 1.
Maintenance fee for Unit 3805
$   1,854 2.
Utilities for Unit 3805
441 3.
Loan expenses for Unit 3805
4,850 4.
Purchase of Unit 5108
155,056 5.
Maintenance fee for Unit 5108
3,262 6.
Utilities for Unit 5108
1,193 7.
Repairs (Mikkelrev III)
1,252 8.
Operating Exp. (Mikkelrev III)
988 7.
Insurance (Mikkelrev III)
1,260 8.
Credit Cards
5,278 8.
Income tax return
4,574 9.
Loan
13,580 10.
Allowance for Else Guinan
7,707 11.
Credit for alimony
(4,800) 12.
Insurance payment to
Allstate Insurance
1,113 13.
Commodity seat on Mid America Exchange
12,500 14.
Education expense for son
1,348 15.
Medical insurance
2,643 16.
Lori (checks)
1,045 17.
Lori (allowance)
9,100 17.
Lori (orthodontist)
965 18.
Lori (education exp.)
1,045 17.
Delta Air Lines
748 18.
Groceries
3,600 19.
Itemized expenses
115 $ 230,717 Petitioner purchased unit 5108 for cash, without a mortgage, in the name of "Alphonse Gonzalez." In purchasing the condominium, petitioner bought cashier's checks, all for less than the amount for which banks are required to file currency reports, for cash at several banks. Petitioner subsequently *229 obtained a mortgage on unit 5108 in the name of "Alphonse Gonzales." The title to unit 5108 and the mortgage were later transferred to a corporate shell. Mortgage payments were generally made with money orders purchased for cash. Petitioner received the following nontaxable items of income in taxable year 1980: Nontaxable Item
Amount Loan proceeds
$  88,054
Insurance proceeds
31,500
Insurance proceeds
2,799
$ 122,353
Petitioner incurred a depreciation expense of $ 60 in 1980, for which he was given credit by respondent. Petitioner reported gross receipts of $ 63,247, gross income of $ 27,148, and adjusted gross income of $ 22,348 on his 1980 Federal income tax return. Unreported Interest Income
During 1981 and 1982, petitioner held several brokerage accounts under assumed names. Petitioner reported no income or dividends on his Federal income tax returns for 1981 and 1982, despite having reported interest income of $ 4,913 and $ 4,999.55 in 1978 and 1979, respectively. The following accounts earned interest and dividends which petitioner failed to report on his Federal income tax returns: Account
Account
Name
Number
1981
1982
Mikkelrev Enterprises, Inc.
1102139
$    345 $      4 Miler Enterprises, Inc.
11775764
11,243 85 Moonraker Enterprises
13963079
171 3,412 George Weber
11550497
17,918 9,490 George Weber
12815906
-   4,538 Moonraker Enterprises
12815892
-   2,582 $ 29,677 $ 20,111 Dividend Exclusion
(100)
(100)     Taxable Interest and Dividends
$ 29,577 $ 20,011 *230 Petitioner reported gross receipts of $ 53,931 and $ 78,237, gross income of $ 29,425.79 and $ 45,010, and adjusted gross income of $ 19,825.79 and $ 35,410 in 1981 and 1982, respectively. Respondent determined that petitioner was liable for deficiencies in the amounts of the omitted taxable interest and dividends. However, respondent did not credit petitioner for expenses attributable to units 3805 and 5108. From April 1981 through March 1982, unit 3805 was rented by Susan Keegan for $ 500 per month (a total of $ 4,500). During 1981, petitioner, through a corporate shell, paid $ 11,220 interest on a mortgage loan, $ 1,440 for property taxes, and $ 2,130 for maintenance and utilities for unit 3805, all of which are deductible expenses. In addition, petitioner is entitled to a depreciation deduction in the amount of $ 2,500 for unit 3805. With respect to unit 5108, which was not rented, petitioner paid $ 10,560 interest on a mortgage loan and $ 2,148 of property taxes. During 1982, the rent received for unit 3805 was $ 2,500. Petitioner paid $ 11,220 interest, $ 1,140 for property taxes, $ 1,650 for maintenance, and $ 480 for utilities, and was entitled to a depreciation deduction *231 of $ 2,300. With regard to unit 5108, petitioner paid interest of $ 12,600, and real estate taxes of $ 2,148. OPINION Arbitrary and Capricious Notice of Deficiency
As a preliminary matter, petitioner contends that the burden of going forward with the evidence is placed on respondent because the statutory notice of deficiency was arbitrary and without foundation. A statutory notice ordinarily carries with it a presumption of correctness that, except where provided in the Internal Revenue Code or the Tax Court Rules of Practice and Procedure, as in the instant case with respect to the increase in deficiencies claimed by respondent in his Amendment to Answer, places the burden of proof and the burden of going forward with the evidence on petitioner. Rule 142(a); Welch v. Helvering,290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933). However, a showing by petitioner that the statutory notice is arbitrary or without foundation has the effect of placing the burden of going forward with the evidence on respondent. Helvering v. Taylor, 293 U.S. 507, 79 L. Ed. 623, 55 S. Ct. 287 (1935); Weimerskirch v. Commissioner, 596 F.2d 358 (9th Cir 1979); Pizzarello v. United States, 408 F.2d 579 (2d Cir. 1969); *232 Jackson v. Commissioner, 73 T.C. 394 (1979). When petitioner asks the Court to find a statutory notice of deficiency arbitrary, he is asking the Court to look behind the statutory notice to examine the evidence used by respondent in making his determination. Riland v. Commissioner, 79 T.C. 185, 201 (1982); Jackson v. Commissioner, supra at 400. We have looked behind the statutory notice only in those rare instances involving illegal unreported income where respondent introduced no substantive evidence, but rested on the presumption of correctness, or when there is substantial evidence of unconstitutional conduct on respondent's part. United States v. Janis, 428 U.S. 433, 441, 49 L. Ed. 2d 1046, 96 S. Ct. 3021 (1976); Jackson v. Commissioner, supra at 401; Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 328 (1974). The instant case does not involve illegal unreported income, or any unconstitutional conduct by respondent. Furthermore, respondent has introduced abundant substantive evidence, rather than resting on the presumption of correctness. The great majority of the weighty documentary *233 evidence was introduced by respondent. We therefore reject petitioner's contention that the notice of deficiency is arbitrary and capricious, and we will not look behind the notice of deficiency to examine the evidence used by respondent in making his determination. Omitted Taxable Income for Taxable Years 1977 Through 1980
Section 6001 requires all taxpayers to maintain sufficient records to determine their correct tax liability. In the absence of such records, respondent may compute the taxpayer's income by a method which clearly reflects income. Sec. 446(b); Petzoldt v. Commissioner, 92 T.C. 661, 687-688 (1989). Respondent determined the deficiency in petitioner's Federal income tax for taxable years 1977 through 1980 through the cash expenditures method. Use of this indirect method has been sanctioned by the Supreme Court. United States v. Johnson, 319 U.S. 503, 87 L. Ed. 1546, 63 S. Ct. 1233 (1943). Proper use of the cash expenditures method requires that respondent either present evidence of a likely source of currently taxable income, or negate nontaxable sources of income. He must also investigate relevant leads furnished by the taxpayer which are reasonably *234 susceptible of being traced and which may show alternative sources of nontaxable income. United States v. Massei, 355 U.S. 595, 2 L. Ed. 2d 517, 78 S. Ct. 495 (1958); Holland v. United States, 348 U.S. 121, 138, 99 L. Ed. 150, 75 S. Ct. 127 (1954); DeVenney v. Commissioner, 85 T.C. 927, 931 (1985). A description of the expenditures method of proof appears in Taglianetti v. United States,398 F.2d 558, 562-563 (1st Cir. 1968), affd. 394 U.S. 316, 22 L. Ed. 2d 302, 89 S. Ct. 1099 (1969), in which the court stated: The cash expenditure method is devised to reach such a taxpayer by establishing the amount of his purchases of goods and services which are not attributable to the resources at hand at the beginning of the year or to non-taxable receipts during the year. The beginning and ending net worth positions must be identified with sufficient particularity to rule out or account for the use of a taxpayer's capital to pay for his purchases. If the end-of-year net worth position is equal to that of the beginning of the year, and if there are no non-taxable sources of income during the year, such as gifts or inheritances, the totality of the year's expenditures reflects total taxable *235 income. If ending net worth shows an increase, the increase reflects an added component of income. If ending net worth shows a diminution, the decrease reduces pro tanto the extent to which expenditures reflect income. [Fn. ref. omitted.]
A deficiency determined by use of the cash expenditures method is presumptively correct, and the burden of proof is upon the taxpayer to demonstrate otherwise, except with respect to the increases in deficiencies claimed by respondent in his Amendment to Answer. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Parks v. Commissioner, 94 T.C. 654, 658 (1990); Burgo v. Commissioner, 69 T.C. 729, 743 (1978). To meet his burden, petitioner must show that someone else made the expenditures, or that the funds were obtained from nontaxable sources, e.g., loans, gifts, inheritances, or assets on hand at the beginning of the taxable period. Taglianetti v. United States, supra.
Respondent has met all the requirements of the cash expenditures method of income reconstruction. First, we note that respondent has established a likely source of currently taxable income, *236 petitioner's legal practice, as required by the cash expenditures method. In addition, respondent has negated nontaxable sources of income other than those for which petitioner was credited. Finally, a review of respondent's exhibits and the testimony of his revenue agent shows that he has investigated all relevant leads furnished by petitioner which are reasonably susceptible of being traced and which may show alternative sources of nontaxable income. At trial, the evidence introduced by petitioner consisted primarily of his unsupported, uncorroborated testimony. We are not required to accept petitioner's self-serving testimony. Geiger v. Commissioner, 440 F.2d 688 (9th Cir. 1971), affg. a Memorandum Opinion of this Court. What little documentary, corroborating evidence petitioner introduced was conclusively rebutted by respondent. Petitioner objects to three elements of respondent's reconstruction of income: (1) The amount at which respondent arrived for beginning balance of cash on hand ($ 3,000); (2) the total expenditures arrived at by respondent, particularly those involving Lori; and (3) the amounts credited as nontaxable sources of income, which *237 petitioner claims are insufficient. Petitioner claims that the correct beginning balance of cash on hand is $ 39,156. Of this amount, petitioner claims that $ 4,156 was held in checking accounts on January 1, 1977, and $ 35,000 was held in safety deposit boxes. With respect to the amount held in checking accounts, respondent examined all of petitioner's checking accounts and determined that the balance as of January 1, 1977, was zero. We have examined respondent's exhibits and find no errors in his methodology. After examining petitioner's checking accounts, respondent arrived at a beginning balance of cash on hand on the basis of a loan application for $ 5,000 executed by petitioner. The application declares that petitioner's cash on hand was $ 3,000, and, giving petitioner the benefit of the doubt, respondent accepted this figure. We can think of no reason, and petitioner provides no reason, why he would knowingly understate his cash on hand on a loan application. In addition, petitioner has not explained the necessity of borrowing $ 5,000 at year-end if he had $ 39,156 cash on hand. With regard to the $ 35,000 cash petitioner claims was held in safety deposit boxes, *238 because petitioner kept no record whatsoever of the amount of cash he received and deposited in the boxes, this argument amounts to no more than mere speculation. Petitioner can offer no evidence proving what amount, if any, was held in safety deposit boxes. A decision favorable to petitioner cannot rest on assumption or speculation. It must rest on facts. Wood Corp. of Delaware v. Commissioner, 22 B.T.A. 1182 (1931), affd. 63 F.2d 1023 (6th Cir. 1933). Petitioner also contends that respondent erred in determining the amount of expenditures during the years at issue. In particular, petitioner challenges the testimony of Lori with respect to the allowance he paid her and the boating trips which he took. Unfortunately, Lori disappeared shortly before petitioner's criminal trial, and was therefore unable to testify during that case or the instant one. However, the District Court allowed into evidence Lori's grand jury testimony. On appeal, the Seventh Circuit ruled that such testimony presented sufficient indicia of trustworthiness to meet the requirements of both Fed. R. Evid. 804(b)(5) and the Sixth Amendment, and held that her grand jury *239 testimony was admissible. United States v. Guinan, 836 F.2d 350 (7th Cir. 1988). We have previously issued an order finding that Lori's grand jury testimony is admissible in the instant case. We find that petitioner has failed to adequately disprove Lori's grand jury testimony, and we therefore sustain respondent's reliance on the testimony in determining petitioner's expenditures during the years at issue. Petitioner also contends that respondent failed to credit him with all of the nontaxable sources of income to which he is entitled. We have reviewed respondent's determination of nontaxable sources, and find it accurate. Petitioner alleges nontaxable sources of income for which he offers no credible evidence. Given his lack of recordkeeping and his record of misstating the facts of the case, petitioner's uncorroborated testimony is insufficient to prove any additional nontaxable sources of income. Because petitioner has failed to introduce evidence sufficient to satisfy his burden of proof, we sustain respondent's determination with respect to the omitted income for taxable years 1977, 1978, 1979, and 1980. Because respondent has met his burden of proof, *240 we also sustain the increase in the deficiencies claimed in his Amendment to Answer. Omitted Taxabe Income for Taxable Years 1981 and 1982
Gross income includes interest and dividends. Sec. 61(a)(4), (7). Petitioner concedes that he omitted from gross income interest and dividends in 1981 and 1982 in the amounts of $ 29,577 and $ 20,011, respectively, which were earned by accounts held in the name of shell corporations. However, petitioner contends that, through the shell corporations, he is entitled to deductions for mortgage interest expense, real estate tax, maintenance expense, utility expense, depreciation, improvement expense, and closing expense, the allowable deductions for which offset the omitted income. These expense deductions were not claimed on petitioner's Federal income tax returns. In his reply to respondent's request for admissions, petitioner admitted that when he filed his 1981 and 1982 Federal income tax returns, he did not believe that he had any expenses, deductions, losses, or credits which he did not claim on the appropriate return. However, as petitioner explained at trial, the real estate in question was held by two shell corporations. Petitioner *241 responded to the request for admissions affirmatively because he thought the corporations, rather than he, were entitled to the relevant deductions. On learning that he would be charged with the income earned by the shell corporations, petitioner recanted his admissions. As part of his determination respondent charged petitioner with the income earned by these corporations, thus disregarding the corporate shells. However, he did not allow petitioner the deductions to which the corporations are entitled. In recanting his admissions, petitioner argues that if the corporate shells are to be disregarded for purposes of income, they should also be disregarded for purposes of deductions attributable to corporate assets. We are convinced that petitioner is entitled to offset the income earned by these corporations by the deductions to which they are entitled. For 1981, petitioner is entitled to deductions attributable to units 3805 and 5108 totaling $ 25,498. Respondent has charged petitioner with $ 29,577 of interest and dividends; the deficiency for 1981, after setting off income and deductions, is reduced to $ 4,079. We give petitioner no credit for alleged improvement costs to *242 unit 3805 because he failed to introduce any evidence to support his testimony. With respect to 1982, petitioner is entitled to deductions attributable to units 3805 and 5108 totalling $ 29,338. Respondent has charged petitioner with $ 20,011 of interest and dividends. After setting off the income and deductions, there is no deficiency for 1982. Additions to Tax Pursuant to Section 6653(b)
Former section 6653(b) and 6653(b)(1) provide for an addition to tax of 50 percent of the amount of a tax deficiency if any part of the underpayment is due to fraud. Section 6653(b)(2) provides for an addition to tax in an amount equal to 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment which is attributable to fraud. To sustain an addition to tax under section 6653(b), respondent has the burden of proving by clear and convincing evidence: (1) That there was an underpayment of tax; and (2) that some portion of the underpayment was due to fraud. Sec. 7454(a); Rule 142(b); Hebrank v. Commissioner, 81 T.C. 640, 642 (1983). Underpayments for the taxable years 1977 through 1981 have been shown. Accordingly, the first *243 element under section 6653(b) is established for those years. Because there was no underpayment for 1982, section 6653(b)(1) and (2) is inapplicable. To establish the second element under section 6653(b), respondent must demonstrate by clear and convincing evidence that the taxpayer had a specific intent to evade a tax due and owing. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968). The issue of fraud presents a factual question which must be decided on the basis of an examination of all of the evidence in the record. Plunkett v. Commissioner, 465 F.2d 299, 303 (7th Cir. 1972), affg. a Memorandum Opinion of this Court; Mensik v. Commissioner, 328 F.2d 147 (7th Cir. 1964), affg. 37 T.C. 703 (1962); Stone v. Commissioner, 56 T.C. 213, 224 (1971); Stratton v. Commissioner, 54 T.C. 255, 284 (1970). Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing, effectuated by conduct designed to conceal, mislead, or otherwise prevent the collection of such tax. Powell v. Granquist, 252 F.2d 56 (9th Cir. 1958); *244 Estate of Pittard v. Commissioner, 69 T.C. 391 (1977). Fraud is never presumed, but rather, must be established by some independent evidence of fraudulent intent. Beaver v. Commissioner, 55 T.C. 85 (1970). Fraud may be proved by circumstantial evidence and inferences drawn from the record because direct proof of the taxpayer's intent is rarely available. Spies v. United States, 317 U.S. 492, 87 L. Ed. 418, 63 S. Ct. 364 (1943); Rowlee v. Commissioner, 80 T.C. 1111 (1983); Stephenson v. Commissioner, 79 T.C. 995 (1982), affd. 748 F.2d 331 (6th Cir. 1984). While a conviction for willful falsification under section 7206(1) is not dispositive, it is one of the facts to be considered in a trial on the merits. Wright v. Commissioner, 84 T.C. 636, 643 (1985). Fraudulent intent may be inferred from a pattern of conduct. Spies v. United States, supra at 499. A pattern of consistent underreporting of income, especially when accompanied by other circumstances showing an intent to conceal, justifies the inference of fraud. See Holland v. United States, 348 U.S. 121, 137, 99 L. Ed. 150, 75 S. Ct. 127 (1954); *245 Otsuki v. Commissioner, 53 T.C. 96 (1969). Fraud may also be inferred where the taxpayer makes false and inconsistent statements to revenue agents. Grosshandler v. Commissioner, 75 T.C. 1, 20 (1980). Similarly, understated income, inadequate records, implausible or inconsistent explanations of behavior, concealment of assets, and failure to cooperate with tax authorities are all indicia of fraud. Bradford v. Commissioner, 796 F.2d 303 (9th Cir. 1986), affg. a Memorandum Opinion of this Court. Fraud is indicated where the taxpayer presents detailed records of expense items and omits substantial amounts from income. Otsuki v. Commissioner, supra.The fact that false returns were also intended to deceive a third party is immaterial so long as the returns were also designed to deceive the taxing authorities. Draper v. Commissioner, 32 T.C. 545 (1959); Schultz v. Commissioner, 30 T.C. 256 (1958), revd. and remanded on other grounds 278 F.2d 927 (5th Cir. 1960); Hecht v. Commissioner, 16 T.C. 981 (1951). The fact that the taxpayer *246 may also have intended to defraud his wife or other creditors does not detract from the fact that he knowingly understated his income on his return with intent to evade tax. Furnish v. Commissioner, 262 F.2d 727 (9th Cir. 1958). Furthermore, fraudulent intent may be more easily inferred where the taxpayer is intelligent, educated, and knowledgeable about taxes. Simms v. Commissioner, 422 F.2d 340 (4th Cir. 1970), affg. a Memorandum Opinion of this Court; O'Connor v. Commissioner, 412 F.2d 304, 310 (2d Cir. 1969), affg. in part and revg. in part a Memorandum Opinion of this Court. However, the mere failure to report income is not sufficient to establish fraud. Merritt v. Commissioner, 301 F.2d 484, 487 (5th Cir. 1962). In addition, fraud may not be found under "circumstances which at the most create only suspicion." Davis v. Commissioner, 184 F.2d 86, 87 (10th Cir. 1950). We find that respondent has demonstrated by clear and convincing evidence that petitioner had a specific intent to evade a tax due and owing. First, respondent has established that petitioner has consistently *247 understated income. In addition, petitioner has, during each year at issue, maintained inadequate records. While petitioner had his secretary keep careful records of his expenses, his methods of recording income were haphazard. What few records of income petitioner did keep he later destroyed for the stated purpose of evading tax. At trial, petitioner alleged no acceptable rationale for the destruction of the income records. Next, petitioner has made every possible attempt to conceal his assets. Petitioner kept his cash receipts in a safety deposit box, used numerous aliases and shell corporations for bank and brokerage accounts, used aliases, shell corporations, and straw men in purchasing real estate, and purchased cashier's checks in unreportable amounts to pay his obligations. His only defense for the concealment is that he was attempting to defraud his first wife, not respondent. Such a defense is unacceptable, and, given the other indicia of fraud, unbelievable. Furnish v. Commissioner, supra.
Petitioner also offered implausible explanations of his behavior. While in the Bahamas with his boat, petitioner testified, he spent no money on food. Rather, *248 he depended for his meals on fish, which he caught and then traded to friendly natives for foodstuffs. Petitioner testified that a ledger sheet which listed clients and dollar amounts paid by them was stolen from his office. However, petitioner never notified any authorities of the theft. Finally, petitioner offered implausible explanations for respondent's motive in pursuing his examination and determination. Petitioner testified that the Government told him that his tax case would be dropped if he would cooperate in Operation Greylord. Petitioner claims these statements were made in the presence of respondent's special agent Patrick McDermott. However, McDermott testified that no such representation was ever made to petitioner. Petitioner offered false testimony at trial regarding respondent's examination. Petitioner testified that when he was audited by Revenue Agent Berkley Keilhack, he provided a list of clients, including the names and amounts received from each client. However, Keilhack testified that petitioner gave him only his bank statements, and claimed that his only income was that which was deposited into his bank accounts. Our observation of petitioner throughout *249 the trial and his failure to offer any credible corroboration or substantiation for any of his defenses renders this testimony by him as false. Another factor in our holding is the conviction of petitioner for willfully subscribing to false tax returns. While this conviction pursuant to section 7206(1) does not collaterally estop petitioner from denying fraud in the years before the Court, it is a factor to be taken into consideration. Wright v. Commissioner, supra.
Finally, petitioner made statements to Lori and to his secretary, such as that he knew how to "get around" the Internal Revenue Service, which are indicative of his intent to evade tax. Based on all of these factors, we sustain respondent's determination with respect to taxable years 1977, 1978, 1979, 1980, and 1981, including the increase in the deficiencies claimed in his Amendment to Answer. Statute of Limitations
Petitioner argues that the statute of limitations bars assessment and collection of the deficiencies and additions to tax due for taxable years 1977 through 1980. This is not the case. Section 6501(c)(1) provides that "In the case of a false or fraudulent return with the *250 intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time." In addition, section 6501(e)(1)(A) provides: "If the taxpayer omits from gross income an amount properly includable therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time within 6 years after the return was filed." We have found that petitioner willfully attempted to evade tax in taxable years 1977, 1978, 1979, 1980, and 1981. Therefore, section 6501(c)(1) permits respondent to assess the determined deficiency and addition to tax at any time. In addition, we have found that, pursuant to section 6501(e)(1)(A), petitioner has omitted from gross income for each such year an amount properly includable therein which is in excess of 25 percent of the amount of gross income stated in the return. The tax may therefore be assessed at any time within 6 years after the return was filed. We therefore find that respondent is not barred by the statute of limitations for taxable years 1977 through *251 1980, as claimed by petitioner. In light of the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended and in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50 percent of the interest due on $ 7,912.40.↩