SAM D. HECHT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SUSAN HECHT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 23169, 23170. Promulgated May 9, 1951.

*J. E. Simpson, Esq.*, for the petitioners.
*R. E. Maiden, Esq.*, for the respondent.

984

### OPINION.

MURDOCK, *Judge:* It is conceded that six of the unexplained bank deposits in the accounts of Susan represented unreported interest and, therefore, the Commissioner was right in adding those to income. Susan testified in regard to the other questioned deposits and her testimony satisfies the Court that they did not represent income. Hecht was questioned about his unexplained deposits and in a few instances gave explanations which, if he can be believed, would indicate that the deposits did not represent income to him. However, his testimony in regard to many of the deposits was vague and leaves real doubt in the record as to what the deposits represented. The Court has made findings which eliminate some of the deposits from income and leave others in. It felt that probably a number of the deposits did not represent income, but that it had to bear most heavily upon the petitioners, who had the burden of proof and had failed to come forward with reasonably convincing explanations in regard to a number of the items.

The petitioners claimed a deduction of $300 for entertainment expenses for 1943. If it was claimed in connection with Hecht's employment by Calvert, it is not a proper deduction because the record shows that Calvert reimbursed Hecht for all entertainment expenses incurred by him in connection with that employment. He testified that he had to do some entertaining in order to get liquor for the various stores in which he had a concealed interest. But the record does not show how much money, if any, he spent, what he spent it for, or why he would spend money in 1943 but not in 1944. In short, for these and other reasons the record does not show that the Commissioner erred in disallowing the deduction of $300 for 1943. The situation in regard to the claimed deduction of $175 for 1945 is much the same and requires the same result.

Hecht undoubtedly used his automobile in connection with his business activities in each of the taxable years. He did not give any indication of how many miles he drove his automobile or how many miles it would carry him on a gallon of gasoline. Calvert reimbursed

him at the rate of 4 cents per mile for any driving which he did on its behalf, yet the petitioners did not take that reimbursement into account in computing the deductions which they claimed for automobile expense. It seems reasonable to believe, as Hecht testified, that 4 cents per mile did not fully compensate him for the use of his automobile in his business. Here, again, the Court has allowed a part of each deduction claimed, although the result is only an approximation resorted to because of the indefiniteness of the record as to a more exact amount.

Income which belonged to Hecht and which he received was reported during the taxable years on returns of others. Hecht paid those three other persons money to reimburse them for the additional taxes which they had to pay because they had included the petitioners' income in their returns. The petitioners now claim that they are entitled to some credit or adjustment under section 3801 of the Internal Revenue Code. It provides that when a determination requires the inclusion in the income of a taxpayer of an item which was erroneously included in the income of a related taxpayer, and correction of the effect of the error is prevented by provisions other than section 3761, then the effect of the error should be corrected by an adjustment made under section 3801. A related taxpayer is defined as one who stood in one of the following relationships to the taxpayer: (A) husband and wife; (B) grantor and fiduciary; (C) grantor and beneficiary; (D) fiduciary and beneficiary, legatee, or heir; (E) decedent and decedent's estate; or (F) partner. The persons who reported the income which belonged to the petitioner were not related taxpayers within the meaning of that section. Merriam Brady does not meet any of the requirements in order to make her a related taxpayer. Samuel Gelman was at times, just like his sister, merely a dummy for Hecht and in such instances he was clearly not a related taxpayer. Kaufman was a partner of Hecht in the S & B Liquor Company, and Gelman was a partner in one or more of the ventures. But in so far as those persons acted as dummies for Hecht, they were not his partners and section 3801 was never intended to cover a situation where, in order to conceal the truth, one person reports income which he and the other party know belongs to the other party and should have been reported by that other party. The petitioners are not entitled to any credits or adjustments under section 3801, and if Hecht is ever to get back or get credit for any of the money which he paid to his dummies, it will have to be in some other way.

The remaining issue is whether the Commissioner has shown that a part of each deficiency is due to fraud with intent to evade tax. The petitioners admit that they failed to include in their returns for each year large amounts of income which they should have reported. Therefore, it is not necessary to consider lesser irregularities in their

returns in connection with this issue. Both petitioners were just about as fraudulent as two people could be in reporting their income tax for each of the taxable years. They tried to conceal income, which belonged to them, behind others and they had those others report that income instead of reporting it themselves. They make two arguments in opposition to the imposition of the fraud penalties. One is that they were not trying to defraud the Government out of tax, but were trying to conceal from Hecht's employer the fact that he was violating its rule that an employee could not own an interest in any business which sold liquor for beverage purposes. Hecht was not employed by Calvert after June 30, 1945, and at the time the 1945 returns were filed there was no purpose to deceive Calvert. It is no doubt true that Hecht deliberately deceived his employer by having his interests in the various businesses engaged in the selling of liquor in the names of others. But when he had those others report his income as if it were theirs, and when he and his wife failed to report the income which they knew was theirs, they were deliberately falsifying their own returns and they were deliberately attempting to deceive the representatives of the Government who would receive and examine those returns. It is not clear that the petitioners had any other purpose in so far as their returns were concerned. But even if the false returns were also intended to deceive Calvert, nevertheless, that would be immaterial so long as they were designed to deceive the taxing authorities. *Spies* v. *United States*, 317 U. S. 492; *National City Bank of New York* v. *Helvering*, 98 F. 2d 93. If the Government authorities had not been alert, the fraud would never have been discovered. The petitioners' other argument is that the difference in tax between the amount which they owed for each year and the amount which was paid by their dummies because those dummies reported the petitioners' income in their returns, for which amounts the dummies were reimbursed by Hecht, is so small that it negatives any intention on the part of the petitioners to evade taxes. They point out in this connection that the shares of two or more partners were sometimes reported by one dummy and that the income of the Kaufmans was greater than the income of the petitioners. They say that since greater savings could have been gained by having more or lower bracket dummies report the income, it is obvious that there was no intent to evade taxes. The fact is, however, that the effect of the scheme in each year was to evade taxes and the petitioners intended to take all of the advantages which might flow from having others report income which they should have reported. Their arguments against the imposition of the fraud penalties are unsound. The Commissioner has fully sustained his burden of proof in regard to fraud and the additions to the tax under section 293 (b) are proper.

*Decisions will be entered under Rule 50.*