STANLEY WESLEY COSCIA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Coscia v. Commissioner
Docket No. 8436-78.
United States Tax Court
T.C. Memo 1981-47; 1981 Tax Ct. Memo LEXIS 696; 41 T.C.M. (CCH) 818; T.C.M. (RIA) 81047; February 9, 1981. *696 Held, part of the underpayment of petitioner's 1974 and 1975 Federal income taxes was due to fraud with intent to evade tax under section 6653(b), I.R.C. 1954. Willie Fortenberry, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined the following deficiencies and additions to tax in petitioner's Federal income taxes: Section [1] 6653(b)
Year
Deficiency
Addition to Tax
1974
$ 2,790.68
$ 3,765.98
1975
3,801.13
1,900.56
1976
116.63
0
When this case was called from the calendar at St. Petersburg, Florida, on June 23, 1980, and again when the case was called for trial, there was no appearance by or on behalf of petitioner. Respondent thereupon moved that *697 the case be dismissed for lack of prosecution and that the Court sustain the deficiencies and additions to tax for fraud as set forth in the notice of deficiency. The Court granted respondent's motion to dismiss with respect to the deficiencies for the years 1974, 1975, and 1976. Accordingly, the only remaining issue for decision is whether any part of petitioner's underpayment of tax for 1974 and 1975 was due to fraud with intent to evade tax. FINDINGS OF FACT Most of the facts have been deemed admitted under Rule 90, Tax Court Rules of Practice and Procedure, [2] and are found accordingly. *698 Stanley Wesley Coscia (hereinafter petitioner) resided in Tampa, Florida, when he filed his joint 1974 and 1975 Federal income tax returns and when he filed his petition in this case. During 1974 and 1975, petitioner was employed as a fireman for the City of Tampa and received wages in the amounts of $ 12,230 and $ 13,640, respectively. He reported these wages as income on his tax returns for those years. During the two years at issue, petitioner received gambling income, as indicated on Internal Revenue Service Forms 1099, from pari-mutuel betting on jai alai and dog races in the respective amounts of $ 23,181.10 and $ 13,586.80. Forms 1099 containing the name, address, social security number, amount received, and signature of the recipient were required to be submitted by jai alai and dog racing establishments to the Internal Revenue Service on parimutual tickets paying $ 600 or more. Sometime in 1975, petitioner approached two individuals, Monroe Brock (hereinafter Brock) and Ramon Ramasanto (hereinafter Ramasanto) at the Tampa dog track and asked them to cash tickets for him in exchange for ten percent of the winnings. Brock and Ramasanto often attended the races and *699 regularly cashed tickets purchased by others for a fee, usually ten percent of the amount collected. Persons acting in this capacity are commonly referred to as "ten percenters" and the purpose of using them is to shield the actual ticket holder from having to sign a Form 1099 in order to collect large payoffs. In their capacity as "ten percenters," Brock and Ramasanto cashed winning tickets for petitioner in the respective amounts of $ 900 and $ 2,800. After providing the necessary information and signing the Forms 1099, Brock and Ramasanto returned the winnings to petitioner and received their agreed upon percentage. Petitioner did not report these winnings on his 1975 return. While undergoing audit by the Internal Revenue Service, petitioner was personally interviewed on several occasions by Special Agent Craig Waldon and Revenue Agent Rene Morissette. During his separate meetings with these agents, petitioner denied knowing Brock, stated that he split a winning ticket with Ramasanto, but repeatedly denied ever using the services of Ramasanto or anyone else as a "ten percenter," and denied that he had unreported gambling income for 1974 and 1975. When shown copies of Forms *700 1099 bearing his name and signature which revealed gambling winnings in excess of amounts reported on his returns, petitioner's only comment was "anything I signed was mine." Throughout the audit process, petitioner was given every opportunity to explain the omissions of gambling income for 1974 and 1975 and to substantiate claimed gambling losses in those years, but was uncooperative and uninformative. As part of his investigation of petitioner's tax liability, Special Agent Waldon interviewed Brock and Ramasanto and asked them about their connection with petitioner. Both men admitted they knew petitioner and that they cashed several tickets for him as "ten percenters." Ramasanto also told the special agent that he never split a ticket with petitioner. On his income tax returns for 1974 and 1975, petitioner reported gross income, gambling income and gambling losses as follows: Gross
Gambling
Gambling
Year
Income
Income
Losses
1974
$ 27,629
$ 15,399
$ 14,000
1975
26,495
12,855
10,000
Petitionr failed to keep records of his gambling winnings and losses in those years even though he fully understood that such records must be maintained in *701 order to claim those amounts on his returns. In his notice of deficiency, respondent determined that petitioner had unreported gambling income of $ 7,782.10 in 1974 and $ 4,431.80 in 1975. Respondent also determined that all or part of the underpayment of tax for those years was due to fraud and asserted additions to tax under section 6653(b). OPINION We must decide whether any part of petitioner's underpayment of tax for 1974 and 1975 was due to fraud with intent to evade tax under section 6653(b). The existence of fraud is a question of fact to be determined upon consideration of the entire record. Stratton v. Commissioner,54 T.C. 255, 284 (1970). Respondent has the burden of proving fraud and he must establish it for each taxable year involved by clear and convincing evidence. Sec. 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure; Cefalu v. Commissioner,276 F. 2d 122 (5th Cir. 1960). To establish fraud, respondent must show that the taxpayer acted with the specific intent to evade a tax believed to be owing. Mitchell v. Commissioner,118 F. 2d 308, 310 (5th Cir. 1941). Since direct evidence of fraudulent *702 intent is seldom available, respondent may meet his burden of proof with circumstantial evidence. Stone v. Commissioner,56 T.C. 213, 223-224 (1971). Such evidence includes conduct calculated to mislead or conceal. Spies v. United States,317 U.S. 492, 499 (1943); Gajewski v. Commissioner,67 T.C. 181, 200 (1976), affd. 578 F. 2d 1383 (5th Cir. 1978). In the instant case, respondent seeks to meet his burden of proof by relying primarily on facts deemed admitted under Rule 90, Tax Court Rules of Practice and Procedure. Although the failure of petitioner to properly prosecute the case does not relieve respondent of his burden of proving fraud, Miller-Pocahontas Coal Co. v. Commissioner,21 B.T.A. 1360 (1931), we have frequently held that respondent may carry that burden with evidence deemed admitted in accordance with the Rules of this Court. See e.g., Gilday v. Commissioner,62 T.C. 260 (1974); Strachan v. Commissioner,48 T.C. 335 (1967). On the basis of the facts deemed admitted and those established at trial, we hold that respondent has proved fraud for 1974 and *703 1975. The record clearly shows that during each of the years at issue petitioner received large amounts of gambling income which he failed to report on his returns. While such repeated understatements of income may not be sufficient to establish fraud, they certainly constitute evidence from which fraud may be inferred. Marinzulich v. Commissioner,31 T.C. 487, 490 (1958). Petitioner's failure to report this income was not due to mere inadvertence or even negligence because he signed Forms 1099 to collect most of his gambling winnings and, therefore, knew such winnings were taxable. In addition, petitioner kept no records of his gambling activities in 1974 and 1975. The failure to maintain books and records of income-producing activities is another indicia of fraud. Lollis v. Commissioner,595 F. 2d 1189 (9th Cir. 1979); Cefalu v. Commissioner,supra;Otsuki v. Commissioner,53 T.C. 96 (1969). The inference of fraud is even more compelling here because petitioner was fully aware of the need to maintain such records. Moreover, the manner in which petitioner conducted his gambling activities in 1975 *704 further supports a finding of fraud. The record demonstrates that during 1975 petitioner solicited the services of Brock and Ramasanto to act as so-called "ten percenters" on his behalf. In that capacity, they cashed winning parimutual tickets for him and signed the required Forms 1099 identifying themselves as the owners thereof for Federal income tax purposes. Obviously, petitioner knew that by having others sign for his gambling winnings, Forms 1099 would not be issued in his name and, therefore, the Internal Revenue Service would not be alerted to his true income. This scheme allowed petitioner, with minimum risk of detection, to receive those winnings without having to account for them on his returns. Such conduct was clearly designed to conceal the receipt of income and is indicative of fraud. See Spies v. United States,supra at 499; Hecht v. Commissioner,16 T.C. 981, 987 (1951). Finally, petitioner's conduct throughout the audit is cogent evidence of fraud. During his meetings with agents Waldon and Morissette, petitioner consistently made false statements concerning his gambling activities and was uncooperative and evasive. Specifically, *705 he denied having unreported gambling income, knowing Brock, or engaging in any ten percenter activities. Considering the documentary evidence conclusively establishing such unreported income and the credible testimony of Brock and Ramasanto disputing the other claims, we can only conclude that petitioner lied to respondent's agents in an attempt to conceal his income. This is strong evidence of fraud. United States v. Newman,468 F. 2d 791, 794 (5th Cir. 1972), cert. denied 411 U.S. 905 (1973); Estate of Upshaw v. Commissioner,416 F. 2d 737, 741 (7th Cir. 1969); Kilpatrick v. Commissioner,22 T.C. 446, 448 (1954), affd. 227 F. 2d 240 (5th Cir. 1955). Accordingly, we hold that the underpayments of tax for 1974 and 1975 were due to fraud and, therefore, we sustain the additions to tax under section 6653(b). To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. Statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. On May 1, 1979, respondent served upon petitioner a Request for Admissions under Rule 90, Tax Court Practice and Procedure, containing 6 numbered paragraphs. This request was filed with the Court on May 4, 1979. On June 1, 1979, petitioner served upon respondent an Answer to the Request for Admissions, objecting only to paragraph 5 thereof. Since petitioner failed to specifically deny or object to paragraphs 1 through 4 and 6 of such request, the matters contained therein are deemed admitted pursuant to Rule 90(c). See Freedson v. Commissioner,65 T.C. 333↩ (1975).