T.C. Memo. 2000-48

UNITED STATES TAX COURT

MARIO BIAGGI and ESTATE OF MARIE BIAGGI, DECEASED,
RICHARD BIAGGI, EXECUTOR, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16697-97.                    Filed February 11, 2000.

        P did not report gross income on account of the
receipt of shares of W Corp. stock in 1983 and the sale
of 25,000 W shares in 1985.  P is collaterally estopped
from contesting the facts established in his criminal
case, <u>United States v. Biaggi</u>, No. 87 Cr. 265
(S.D.N.Y., Nov. 18, 1988), including extortion,
bribery, and receipt of an unlawful gratuity in
connection with his demand and receipt of W shares, and
filing false income tax returns for failing to report
income from his ownership of W shares.
        1.  <u>Held</u>: The fair market value of the W shares
was $11.20 a share; therefore, P omitted from gross
income $1,260,000 in 1983 and $107,000 in 1985.
        2.  <u>Held</u>, <u>further</u>, P is liable for additions to
tax on account of fraud under sec. 6653(b)(1) and (2),
I.R.C.
        3.  <u>Held</u>, <u>further</u>, P is liable for additions to
tax under sec. 6661, I.R.C.
        4.  <u>Held</u>, <u>further</u>, R has met his burden of proof
under sec. 6501(c)(1), I.R.C., and the statute of

limitations does not bar assessment and collection of
tax for 1983 and 1985.

Leonard Bailin, for petitioners.

Drita Tonuzi and Daniel Rosen, for respondent.

MEMORANDUM OPINION

HALPERN, Judge:  By notice of deficiency dated May 22, 1997,
respondent determined deficiencies in, and additions to,
petitioners' Federal income tax as follows:

| | | Additions to Tax* | | |
|---|---|---|---|---|
| Year | Deficiency | Sec. 6653(b)(1) | Sec. 6653(b)(2) | Sec. 6661 |
| 1983 | $626,647 | $313,324 | ** | $156,662 |
| 1985 | 25,003 | 77,268 | ** | 6,251 |

    * Respondent did not determine any additions to tax with
respect to Marie Biaggi under sec. 6653 (b)(1) and (2).
    ** 50% of the interest due on total deficiency.

    Unless otherwise noted, all section references are to the
Internal Revenue Code of 1954 in effect for the years in issue,
and all Rule references are to the Tax Court Rules of Practice
and Procedure.

I.  Introduction

    Respondent's determination of a deficiency for 1983 results
from his adjustment increasing petitioners' gross income for 1983
by $1,260,000 on account of the receipt by petitioner Mario
Biaggi (petitioner) during that year of 112,500 shares of stock
of Wedtech Corp., a New York corporation (the Wedtech shares and

Wedtech, respectively). Respondent's determination of a deficiency for 1985 results from his adjustment increasing petitioners' gross income for 1985 by $107,000 on account of the sale by petitioner of 25,000 of the Wedtech shares (the 25,000 shares).

At the commencement of the trial in this case, the parties stipulated that petitioner Richard Biaggi, executor, representing the Estate of Marie Biaggi, was relieved of all liability for tax and additions to tax for 1983 and 1985 under section 6013(e) on account of Marie Biaggi's status as a so-called "innocent spouse". The Court accepted that stipulation, and we shall reflect it in our decision.

At the conclusion of the trial in this case, petitioner conceded that respondent was correct in adjusting petitioners' gross income for 1983 to include the value of the Wedtech shares. However, petitioner does not concede that, when received, the value of the Wedtech shares was $1,260,000, and we must determine that value. Petitioner also conceded that, in 1985, he realized gain on the sale of the 25,000 shares, which, erroneously, he failed to report. He agrees that (1) the amount he realized on that sale was $387,111, and (2) his adjusted basis in the 25,000 shares is a proportionate amount of the value we determine for the Wedtech shares.

We must also determine whether petitioner is liable for the additions to tax.

Some of the facts have been stipulated and are so found. The stipulation of facts, with accompanying exhibits, is incorporated herein by this reference. We need find few facts in addition to those stipulated and, accordingly, do not separately set forth those findings. We include additional findings of fact in the discussion that follows.

At the time the petition was filed, petitioner resided in Bronx County, New York.

II. Background

In 1983, petitioner was a member of Congress, from the 19th District in New York. Wedtech was a manufacturing company located in New York City, which received contracts from the U.S. Department of Defense. In 1987, petitioner was indicted on, and in 1988 he was convicted of, various counts arising out of his relationship with Wedtech. Among those counts were (1) racketeering in connection with his demand and receipt of the Wedtech shares and $50,000 in exchange for influencing public officials to grant a lease to Wedtech; (2) extortion, bribery, and receipt of an unlawful gratuity in connection with his demand and receipt of the Wedtech shares; (3) making false statements in concealing his ownership of the Wedtech shares; (4) filing false income tax returns for failing to report income derived from

acquisition of the Wedtech shares; and (5) perjury in connection with falsely testifying before a grand jury.

The Wedtech shares were not delivered to petitioner, but were delivered to his son, Richard Biaggi (Richard), who received the Wedtech shares as petitioner's nominee. Richard was convicted of filing false income tax returns by overstating his income to include the receipt of the Wedtech shares on his 1983 return and reporting gain from the sale of 25,000 shares on his 1985 return.

For a detailed discussion of the facts leading to the convictions of both petitioner and Richard, see United States v. Biaggi, 909 F.2d 662 (2d Cir. 1990). In that case, the Court of Appeals for the Second Circuit affirmed the convictions of petitioner on all counts and Richard for filing false income tax returns for 1983 and 1985. The underlying criminal case against petitioner and Richard was designated United States v. Biaggi, No. 87 Cr. 265 (S.D.N.Y., Nov. 18, 1988) (the criminal case). Petitioner is collaterally estopped from contesting the facts established in the criminal case.[1]

---

[1]    By the answer, respondent set forth his defense of collateral estoppel, based on the criminal case and barring petitioner from denying certain facts (the estoppel facts) established in that case. See Rule 39. By the reply, petitioners denied the applicability of collateral estoppel. Subsequently, in Petitioners' Opposition to Respondent's Motion for Partial Summary Judgment and Cross Motion for Summary Judgment in Petitioners' Favor (the opposition), petitioners
                                                            (continued...)

Petitioner did not report any gross income on account of either the receipt of the Wedtech shares in 1983 or the sale of the 25,000 shares in 1985. Richard reported the receipt of the Wedtech shares on his Federal income tax return for 1983 at an aggregate value of $34,931, or $0.31 a share. Richard reported the sale of the 25,000 shares on his Federal income tax return for 1985, showing a gain of $380,457, an aggregate basis for those shares of $6,654 and an amount realized of $387,111.

III. Deficiencies

A. Value of Wedtech Shares

We first must determine the fair market value of the Wedtech shares.

In August 1983, Wedtech went public by offering 1,900,000 shares of its stock to the public at $16 a share (the IPO).[2] Petitioner received the shares on a date (the valuation date) sometime between the date of the underwriter's commitment letter

_____

[1](...continued)
conceded respondent's defense of collateral estoppel: "The petitioners agree that collateral estoppel does apply to most of the facts decided in the criminal case. However, the essential issues of intent and tax evasion were never at issue." The estoppel facts consist of 64 numbered paragraphs, which are incorporated herein by this reference and found for purposes of this case, because petitioner is estopped from denying them. Petitioner's fraudulent intent is not established by the estoppel facts.

[2] There is a discrepancy in the record over the date of the IPO. We need not resolve the exact date of the IPO to determine the fair market value of the Wedtech shares on the valuation date.

with respect to the IPO (May 9, 1983) and the date of the IPO. Respondent valued the Wedtech shares at $11.20 a share in making the adjustment that led to the deficiency for 1983.

Petitioner offers no evidence as to the value of the Wedtech shares on the valuation date other than the amount shown on a Form 1099 issued to Richard in connection with his receipt of the shares as a nominee for petitioner. Apparently, that value, $0.31 a share, was based upon the book value of Wedtech.

Respondent reached a value of $11.20 a share by taking into account the initial public offering price, a 2-year restriction on transferability that applied to the Wedtech shares, and other contemporaneous transactions. In determining the value of unlisted stocks, actual sales made in reasonable amounts at arm's length, in the normal course of business within a reasonable time before or after the valuation date are the best criteria of market value. See, e.g., Estate of Fitts v. Commissioner, 237 F.2d 729, 731 (8th Cir. 1956), affg. T.C. Memo. 1955-269; Estate of Andrews v. Commissioner, 79 T.C. 938, 940 (1982). The prospectus accompanying the IPO describes three sales on May 13, 1983, aggregating 40,000 shares of Wedtech stock, for $12.50 a share. Those shares were restricted in the same manner as the Wedtech shares. That prospectus also states that the same shares were repurchased for $14.80 a share during August 1983. Those

transactions are substantially contemporaneous to the valuation date and support respondent's valuation.

Moreover, a public offering price is a factor which can be taken into account with due regard to be given to the time span between the valuation date and the sale to the public, and the contingencies inherent in a contemplated public offering.  See Messing v. Commissioner, 48 T.C. 502, 509 (1967).  The offering price of the IPO was $16 a share in August 1983.  The IPO was also substantially contemporaneous to the valuation date and lends some support to respondent's valuation.[3]

Petitioner contends that the book value, as of January 1, 1983, of $.31 a share is a better indicator of value than respondent's determination of $11.20 a share.  We have long stated that the book value of a stock is not a reliable basis from which to determine the stock's fair market value.  See Evans v. Commissioner, 29 B.T.A. 710 (1934); Peavey Paper Mills v. Commissioner, T.C. Memo. 1960-237 ("Book value frequently bears no relationship to actual cash value or fair market value." (quoting Ketler v. Commissioner, 196 F.2d 822, 827 (7th Cir. 1952), revg. and remanding 17 T.C. 216 (1951))).  Since we

---

[3]     We agree with the Court of Appeals for the Second Circuit that the public offering price cannot, without adjustment, be used to determine the fair market value of shares subject to transfer restrictions.  See Biaggi v. United States, 909 F.2d 662, 681 (2d Cir. 1990).  However, we do think that the public offering price does provide a comparable that, with adjustments, can assist in valuing the shares.

believe that the stock was worth more than the book value and that the valuation date was not January 1, 1983, we disagree with petitioner's proposed valuation.

We find that the fair market value of each of the Wedtech shares on the valuation date was $11.20. Therefore, the fair market value of all of the Wedtech shares on the valuation date was $1,260,000, as determined by respondent.

B. Adjusted Basis in the 25,000 Shares

Based on our finding that the fair market value of each of the Wedtech shares was $11.20 on the valuation date, that amount is petitioner's adjusted basis in each of the 25,000 shares disposed of by him in 1985. Petitioner disposed of 25,000 shares in 1985, and, therefore, his total adjusted basis in those shares is $280,000. He realized $387,111 on that sale, which results in a gain of $107,000 for 1985. See sec. 1001(a).

C. Conclusion

For 1983 and 1985, petitioner omitted from gross income $1,260,000 and $107,000, respectively. Respondent's determinations of deficiencies on account of those omissions are sustained.

IV. <u>Additions to Tax</u>

A. <u>Section 6653</u>

Respondent determined that petitioner was liable for additions to tax for 1983 and 1985 under section 6653(b)(1) and (2).

1. <u>Section 6653(b)(1)</u>

Section 6653(b)(1) imposes an addition to tax equal to 50 percent of any underpayment in tax if any part of such underpayment is due to fraud. Respondent bears the burden of proving fraud by clear and convincing evidence. See sec. 7454(a); Rule 142(b). To prevail under section 6653(b)(1), respondent must show both (1) an underpayment of tax exists and (2) some part of the underpayment is due to fraud. See, e.g., <u>DiLeo v. Commissioner</u>, 96 T.C. 858, 873 (1991), affd. 959 F.2d 16 (2d Cir. 1992).

a. <u>Existence of Underpayment</u>

The first element of section 6653(b)(1) is whether any underpayment of tax exists. Section 6653(c)(1) defines an "underpayment" for purposes of section 6653 as a "deficiency" defined by section 6211. We have found that, for 1983, petitioner understated his income by $1,260,000 and, for 1985, erroneously failed to report a gain realized on the sale of the Wedtech shares. Each omission resulted in a deficiency in tax;

petitioner's omissions, thus, clearly and convincingly establish underpayments for 1983 and 1985.

b. Fraudulent Intent

The second element of section 6653(b)(1) is the taxpayer's state of mind, to wit, whether the taxpayer intended to evade tax believed to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such tax. See, e.g., Recklitis v. Commissioner, 91 T.C. 874, 909 (1988). The existence of a fraudulent state of mind is a question of fact to be determined from the entire record. See, e.g., id. Fraud is never imputed or presumed; it may, however, be proved by circumstantial evidence, because direct proof of the taxpayer's intent is rarely available. See, e.g., id. at 910-911. Respondent need not establish that tax evasion was a primary motive of petitioner but may satisfy his burden by showing that a tax-evasion motive played any part in petitioner's conduct, including conduct also serving to conceal another crime. See Spies v. United States, 317 U.S. 492, 499 (1943)("If the tax-evasion motive plays any part in such conduct the offense may be made out even though the conduct may also serve other purposes such as concealment of other crime."); Recklitis v. Commissioner, supra at 910.

Petitioner was convicted under section 7206(1) of willfully making false statements on his Federal income tax returns for

1983 and 1985 subscribed under penalties of perjury.  Those convictions do not collaterally estop him from challenging respondent's allegations of civil fraud.  Nevertheless, those convictions create powerful inferences that petitioner possessed the willfulness necessary to satisfy the intent element of section 6653(b)(1).  See <u>Wilson v. Commissioner</u>, T.C. Memo. 1994-454; <u>Avery v. Commissioner</u>, T.C. Memo. 1993-344; <u>Estate of Sawczak v. Commissioner</u>, T.C. Memo. 1993-210, affd. 46 F.3d 70 (11th Cir. 1995).

In addition to those inferences, petitioner is collaterally estopped from denying the following facts established in his criminal trial:  The Wedtech shares were paid to petitioner as a bribe to influence him to use the power of his office to secure Government contracts for Wedtech.  The Wedtech shares were paid to him in response to extortionate demands by him.  Petitioner knew that, if the shares were received by him in his own name, his income for 1983 would exceed the statutory cap on income provided for under rules of the U.S. House of Representatives.  For that reason, petitioner agreed to have the Wedtech shares registered in the name of Richard.  When the Wedtech shares were issued, petitioner knew that, under the circumstances, he was the owner of those shares, that Richard was not, and that Richard received those shares as a nominee for petitioner.  When the Wedtech shares were issued, petitioner knew that, as owner of

those shares, he was required to report the value of those shares as income for 1983, as he had been advised by his accountant. In 1985, Richard, as petitioner's nominee, sold the 25,000 shares and improperly reported the gain on his income tax return. Petitioner did not report any gain in connection with the sale of the 25,000 shares.

Putting together the willfulness established by petitioner's convictions for violating section 7206(1) and the facts that petitioner is estopped from denying, we find that petitioner had the requisite fraudulent intent both with respect to 1983 and 1985; i.e., the intent to evade tax believed to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such tax. Even if we were to disregard the facts that petitioner is estopped from denying, we would reach the same conclusion, based on the evidence directly presented in this case. Petitioner intended to omit income to satisfy the Congressional requirements restricting his outside income to less than 30 percent of his Congressional salary. In the process of deceiving Congress, petitioner intended to understate his income on his tax returns.

Petitioner argues that there was no tax evasion and no loss of revenue to respondent because Richard, as his nominee, reported the income from the receipt of the Wedtech stock and 1985 sale of such stock. However, we have long held that a

taxpayer may be liable for an addition to tax for fraud, even where he causes the income to be reported on the returns of family members or others and pays the taxes due thereon. See Hecht v. Commissioner, 16 T.C. 981, 987 (1951); Lang v. Commissioner, T.C. Memo. 1961-134 (taxpayer could not excuse himself of understatement of tax due to fraud by shifting his income to family members). In any event, petitioner never instructed his son to report the receipt of the stock or its sale in 1985 and merely assumed his son properly reported the income.

Petitioner argues that his reliance on his accountants is a defense to fraud. "Reliance on a bookkeeper or accountant is no defense to fraud if the taxpayer failed to provide the accountant 'with all of the data necessary for maintaining complete and accurate records'". Korecky v. Commissioner, 781 F.2d 1566, 1569 (11th Cir. 1986) (quoting Merritt v. Commissioner, 301 F.2d 484, 487 (5th Cir. 1962), affg. T.C. Memo. 1959-172), affg. T.C. Memo. 1985-63. Since petitioner admits that he never told his accountants that he owned the Wedtech stock, his reliance on his accountants is not a defense to fraud.

c. Conclusion

We sustain respondent's additions to tax on account of fraud under section 6653(b)(1).

2.  Section 6653(b)(2)

Under section 6653(b)(2), a separate addition to tax (equal to 50 percent of the interest payable under section 6601) is determined with respect to "the portion" of the underpayment attributable to fraud.  Respondent bears the burden of proving the specific portion of the underpayment of tax that is attributable to fraud for purposes of applying the section 6653(b)(2) addition to tax.  See DiLeo v. Commissioner, 96 T.C. at 873; Franklin v. Commissioner, T.C. Memo. 1993-184.  In all other respects, respondent's burdens are identical under section 6653(b)(1) and (2).

Respondent asserts that the entire underpayments for both 1983 and 1985 are due to fraud.  For the above stated reasons, we find that respondent has clearly and convincingly established that the entire underpayments are due to fraud.  As petitioner's unreported income from the receipt of the Wedtech shares is the sole source of the underpayment for 1983, the entire underpayment for 1983 is due to fraud.  Similarly for 1985, as the unreported gain from the sale of 25,000 shares is the sole source of petitioner's underpayment in 1985, the entire underpayment is due to fraud.  Accordingly, we sustain respondent's determinations of additions to tax under section 6653(b)(2) for 1983 and 1985 on the total underpayments for those years.

B.  Section 6661

Respondent also determined that petitioner substantially understated his income tax liability and is liable for the additions to tax under section 6661 for 1983 and 1985.  The amount of an addition to tax for a substantial understatement of income tax for a taxable year, which addition is assessed after October 21, 1986, equals 25 percent of the amount of any underpayment attributable to such substantial understatement.  See sec. 6661(a); Pallottini v. Commissioner, 90 T.C. 498, 500-503 (1988).  A substantial understatement of income tax is defined as an understatement of tax that exceeds the greater of 10 percent of the tax required to be shown on the return for the year or $5,000.  See sec. 6661(b)(1)(A).

Petitioner's understatement of income tax is substantial according to section 6661(b)(1)(A).  Petitioner had no authority for his failure to report the understatement of income in 1983 or 1985, nor did petitioner disclose any facts pertaining to such income on his 1983 and 1985 returns or in a statement attached to his returns.  Therefore, petitioner is liable for the section 6661 additions to tax.

V.  Statute of Limitations

Petitioners timely made the returns here in question. Respondent issued his notice of deficiency on May 22, 1997, more than 3 years after the last of those returns was filed.

Section 6501(a) provides, generally, that any tax must be assessed within 3 years of the date on which the tax return was filed. That general rule has an exception for fraud, which states, in relevant part: "In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed * * * at any time." Sec. 6501(c)(1). Respondent has the burden of proof with regard to the additions to tax for fraud. See sec. 7454(a); Rule 142(b). In order to carry his burden as to fraud, respondent must prove that some part of the underpayment for each of the years in question is due to fraud with the intent to evade tax. See sec. 7454(a); Rule 142(b). The elements of fraud that respondent must prove under section 6501(c)(1) are the same elements essential for imposing a fraud penalty under section 6653(b). See Estate of Temple v. Commissioner, 67 T.C. 143, 159-160 (1976); Mobley v. Commissioner, T.C. Memo. 1993-60, affd. 33 F.3d 1382 (11th Cir. 1994).

In view of our finding that petitioner's understatement of tax for both 1983 and 1985 was the result of fraud, we find that respondent has met his burden under section 6501(c)(1) for each year in issue. Therefore, the statute of limitations does not bar assessment and collection of tax for those years.

Decision will be entered

under Rule 155.